EMMA P. JACKMAN, Appellant, *vs.* FLORENCE N. KASPER *et al.*, Appellees.

*Opinion filed March 20, 1946—Rehearing denied May 21, 1946.*

Murphy & Anderson, and Orville R. Seiter, both of Joliet, for appellant.

Frank J. Wise, of Joliet, for appellees.

Mr. Chief Justice Thompson delivered the opinion of the court:

This case involves the proper construction of the last will and testament and two codicils thereto of Florence B. Paulson, deceased; and, since the will and codicils and the decree construing the same affect the disposition and ownership of both real and personal property, appellant prosecutes a direct appeal to this court.

The testatrix, a widow, died September 13, 1939, leaving the above-mentioned will and codicils, all of which were in her own handwriting. The will was executed November 16, 1922; the first codicil January 20, 1936; and the second codicil on July 13, 1937. At the time the will was executed she had four children then living and no children or descendants of any deceased child or children. Her children were an unmarried son and daughter, Norman B. Paulson and Louise B. Paulson, and two married daughters, the appellant and Elizabeth B. P. North.

The testatrix, by her will appointed her son, Norman B. Paulson, and her son-in-law, William W. North, executors, without bond. By the first clause of her will she directed the payment of her debts and funeral expenses; and by the second clause, which was divided into a number of paragraphs, she made a complete disposition of her entire estate. By the first seven of these paragraphs, she bequeathed $200 to each grandchild living at the time of her death, $300 to William W. North, $100 to a cousin, and made bequests of jewelry to each of her four children. The remaining paragraphs (as numbered by counsel for convenience, and which numbering we will also adopt,) are as follows:

"(8) I give, devise and bequeath to my daughter, Louise B. Paulson, as long as she remains unmarried and for and during the term of her natural life only, the income from the sum of Fifteen Thousand Dollars ($15,000.00). In the event of her marriage, either before or after my death, the foregoing provision for her shall be void, and I give, devise and bequeath to her, in lieu thereof, in fee simple and unconditionally a one-fourth interest in my estate, both real and personal, the same as provided in the residuary clause of this Will. Said Louise B. Paulson, shall also, during the time she remains unmarried and for and during the term of her natural life only, have the use of all my household goods and furniture, so long as she keeps and occupies my home, sharing it equally with my son, Norman B. Paulson, so long as he remains unmarried and desires to make it his home.

(9) Subject to the foregoing legacies, including the foregoing provisions for my daughter, Louise B. Paulson, I give, devise and bequeath to my daughter, Emma P. Jackman, the net rents, income and profits of one-fourth (¼) part of my estate, both real and personal, for and during the term of her natural life; remainder upon her death to her children then living, in fee simple and unconditionally, share and share alike. Provided said one-fourth (¼) interest shall be reduced in the sum of Eighteen Hundred Sixty-five Dollars and thirty-seven cents ($1865.37) for the following express reasons, with others which I do not express; I paid on the note of her husband, George L. Jackman, to Harlow D. Higinbotham, on which note I was surety the sum of $5106.94 principal and interest and a further sum of $46.87 in interest on borrowed money to pay said note, making a total of $5153.81 paid by me on account of said note of George L. Jackman. I desire to credit

my said daughter, Emma P. Jackman with one-fourth (¼) part thereof, being the sum of $1288.44, and also credit her a further sum of $2000.00, making a total credit of $3288.44 and leaving said balance of $1865.37. Said credit of $2000.00 being on account of legacy from her grandmother, Elizabeth Boyer, which was not paid.

(9a) And provided further said one-fourth (¼) interest shall be further reduced in the sum of Fourteen Thousand Six Hundred Twenty-five Dollars ($14,625.00) being three-fourths of the sum of $19,500.00 for which I and William W. North as sureties for said George L. Jackman, executed and signed notes payable to the Will County National Bank, Joliet, Illinois, and for which we are liable and responsible. Whatever part or portion of said $19,500.00 is paid, or caused to be paid by said William W. North, or his wife, Elizabeth B. P. North, (my daughter) together with all interest paid by them on account thereof shall be paid to my said daughter, Elizabeth B. P. North, as a legacy from me from the said deduction of $14,625.00 from the legacy and devise to said Emma P. Jackman, and provided further said Emma P. Jackman shall have credit on said sum of $14,625.00 from any amount paid on the principal of said notes, or refunded to me, or said William W. North, if paid by us, or either of us, together with the interest paid or incurred before my death.

(10) All the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath to my three children, Elizabeth B. P. North, Louise B. Paulson and Norman B. Paulson, subject to the foregoing provision for my said daughter, Louise B. Paulson, in fee simple and unconditionally, in equal shares, share and share alike.

(10a) In the event of the death of either the said Elizabeth B. P. North, Louise B. Paulson or Norman B. Paulson before my death, leaving a child or children, the parent's share under the provisions of this will to go to such surviving child or children of such deceased parent, in equal shares.

(11) For the purpose of carrying out all the provisions of my Will, I authorize and empower and direct my son, Norman B. Paulson, and my son-in-law, William W. North, whom I appoint Trustees herein, in their discretion to lease or sell any or all of my real estate of which I die possessed, at such times and upon such terms as shall seem to them advantageous and advisable, and to the same extent as I might do, if living, with full power and authority to make, acknowledge, execute and deliver any and all proper and necessary deeds, leases or other instruments or documents; also with full power and authority to convert to cash my personal estate, and make distribution of same as herein directed; also to collect, invest and reinvest funds from which the said Louise B. Paulson and Emma P. Jackman are to have the income

as herein provided, and to pay the said income to said Louise B. Paulson and Emma P. Jackman according to their respective rights and bequests herein set forth and contained."

The first codicil to the will gave to David Jackman, a grandson, born after the making of the will, a legacy of $500, and to Charles Boyer Kasper, a great-grandson, a legacy of $50, and revoked the legacy of $100 to the cousin. This codicil bequeathed her rosewood parlor suite and four pictures to her daughter, Louise, and one picture to her daughter, Elizabeth B. P. North. She also gave to Mrs. North a mahogany parlor suite, stating in the codicil that her daughter, Emma Jackman, had already been given a similar mahogany suite. She directed that at the death of Mrs. North the mahogany suite given her by the codicil and the diamond given her in the will were to be passed on to Florence North Kasper, the granddaughter of testatrix. This codicil also contained the following clause:

"In the event of the death of anyone or more of my children before my death, it is my wish that the remainder of my estate, after paying all bequests and special provisions, according to my will, be divided equally among my surviving children."

Elizabeth B. P. North died January 9, 1937, and her husband William W. North, died on May 27, 1937. The second codicil, which was executed shortly after their deaths, is as follows:

"Owing to the death of my son-in-law Wm. W. North, who I had appointed in my Will, to act as executor of my Estate, I now appoint my daughter, Louise B. Paulson in his place to act as executrix with my son, Norman B. Paulson, executor, without bond. Also the sum of three hundred dollars ($300.00) which I had bequeathed to said Wm. W. North, I now wish to be divided equally between my daughters, Louise B. Paulson, Emma Jackman and my son Norman B. Paulson. Also owing to the death of my daughter, Elizabeth North, her share of my estate after the payment of the trust fund, is to be divided equally among my three remaining children, Louise B. Paulson, Norman B. Paulson and Emma Jackman. The diamond ring containing two diamonds which was to be separated, giving one diamond to Elizabeth North

and one to my daughter, Emma Jackman, I now wish one diamond to go to my son Norman B. Paulson and one diamond to my daughter Emma Jackman. I wish the mahogany parlor set to go to my son Norman B. Paulson and the oil painting of Venice to my daughter Louise B. Paulson; I also wish an extra one hundred dollars ($100.00), to be given my granddaughter Florence North Kasper."

At the time the will was executed, testatrix and her son and daughter, Norman and Louise, were living together, as a family in the home of testatrix, and continued to so live there until her death, after which the son and daughter lived together, occupying the family home, until the death of Norman on June 18, 1942; and thereafter Louise continued to live in the home until her death which occurred on May 9, 1943.

The will and codicils were duly admitted to probate in the probate court of Will county, October 31, 1939, and Norman and Louise were appointed by the court as executors. Norman also acted as trustee, under the authority of the will, and held in trust the $15,000 trust fund, paying the income therefrom to Louise until his death, after which Louise acted as sole executrix of her mother's estate, holding the trust fund and paying herself the income therefrom until her own death on May 9, 1943. Neither Norman nor Louise were ever married. Both died testate, and the wills of both have been duly admitted to probate. Warren H. North, a son of Elizabeth B. P. North, is the appointed and acting executor of the will of Louise B. Paulson, deceased. He is now also administrator *de bonis non* with the will annexed of the estates of both Florence B. Paulson and her son, Norman B. Paulson.

The record shows that appellant filed a claim against her mother's estate for the unpaid balance of the Boyer legacy mentioned in paragraph (9) of her mother's will, and that her claim was paid and satisfied by the executors and a receipt therefor in full given by appellant. The record also shows that the sum of $11,919.51 was paid by

William W. North, as surety for appellant's husband, upon the notes mentioned in paragraph (9a) of the will and that neither appellant nor her husband ever paid any part of the husband's indebtedness mentioned in the will or refunded to either North or the testatrix any amount paid by them on his notes.

This suit was filed by appellant, Emma P. Jackman, in the circuit court of Will county, in March, 1944, alleging the facts above stated and further alleging that under paragraph (9) of the second clause of the will in question she, as life tenant, and her children, as remaindermen, were entitled to one fourth of her mother's estate, without any reduction of or deduction therefrom whatsoever; that the provisions and conditions contained in paragraphs (9) and (9a,) attempting to cut down the one-fourth interest devised and bequeathed to appellant and her children, are void and of no effect, and that the gift over attempted to be made to Elizabeth B. P. North from such reductions or deductions is likewise void and of no effect. She further alleged that the *corpus* of the $15,000 trust fund was not intended by the testatrix to be included as a part of the four-way division of her estate provided for in paragraph (9) of her will wherein she gave to appellant and her children a one-fourth interest in her estate, but that the *corpus* of said $15,000 trust fund was intended to be and was included as a part of her residuary estate; that appellant, under the will as modified by the codicils, was entitled to one third of the residuary estate of the testatrix; and that said residuary estate included not only the *corpus* of the trust fund of $15,000, but also the sum of $11,919.51, being the amount paid by William W. North upon the indebtedness of appellant's husband, which was, by the terms of the original will, directed to be deducted from the one-fourth share of appellant and her children and paid to the wife of North as a legacy from her mother. She prayed that the court construe the will and codicils in accordance

with her contentions, and that a trustee be appointed as successor to the trustees nominated by the testatrix in her will.

The trial court entered a decree holding that the *corpus* of the $15,000 trust fund created for the benefit of Louise B. Paulson was included in the four-way division of the testatrix's estate, the distribution of such *corpus* being postponed until the death or marriage of Louise; that by reason of the death of Louise, unmarried, the $15,000 trust fund immediately became distributable, one fourth thereof to plaintiff and her children, subject to the deductions or reductions and the gift over to Elizabeth B. P. North provided for in paragraphs (9) and (9a) of the will, and the remaining three-fourths under the residuary clause of the will as modified by the second codicil; that said reductions or deductions and the gift over to Elizabeth B. P. North are not void; that the one-fourth part of testatrix's estate devised and bequeathed to appellant and her children should be reduced by the deduction therefrom of the sum of $18,490.37, because of the obligations paid for the husband of appellant by testatrix and William W. North and because of the claim filed by appellant against her mother's estate; that out of the amount so deducted there should be paid to the children of Elizabeth B. P. North, deceased, the sum of $11,919.51, being the amount paid by William W. North on the indebtedness of appellant's husband; and that the balance, if any, of said reduction or deduction, after paying therefrom the said legacy of $11,919.51 to the children of Elizabeth B. P. North, should be distributed as a part of the testatrix's residuary estate; that if said one-fourth part of the testatrix's estate devised and bequeathed to appellant and her children exceeds the sum of $18,490.37, then the excess over that amount should go to appellant for life, with remainder after her death to her surviving children in equal shares; and that under the residuary clause of the will, and the codicils thereto, ap-

pellant is enitled to receive a one-twelfth part of the testatrix's residuary estate; that Warren H. North, as the personal representative of the estate of Norman B. Paulson, deceased, is entitled to receive a one-third part of said residuary estate; and that the said Warren H. North, as the personal representative of the estate of Louise B. Paulson, deceased, is entitled to receive a one-third part of the said residuary estate. The court, by the decree, further appointed a successor trustee, to act under the will of Florence B. Paulson, deceased, fixed the amount of his bond, and retained jurisdiction of the cause to effectuate the terms of the decree and to supervise the administration of the trust created by the will for the benefit of appellant and her children.

The first assignment of error is an attack upon that part of the decree holding that the *corpus* of the $15,000 trust fund was included by testatrix in the four-way division of her estate and is now distributable, under the terms of the will, one fourth to appellant and her children and the remaining three-fourths to the residuary legatees. Appellant's contention is that the entire *corpus* of this trust fund passed under the residuary clause in effect at the time of testatrix's death, and that no part whatever of such fund was included within the one-fourth part of the estate given to appellant and her children. This conclusion she arrives at by the following process of reasoning, *viz.:* (1) The gift to appellant and her children of a one-fourth part of the estate being made "subject to the foregoing legacies, including the foregoing provisions for my daughter, Louise B. Paulson," was thus expressly declared to be subordinate to the legacies designated and subordinate to the trust fund, and the necessary effect thereof was to except and exclude from the gift to appellant and children the said legacies and the $15,000 trust fund; (2) that to consider the trust fund as a part and parcel of the estate to be divided into four equal shares would render the pro-

vision of the will giving one fourth of the estate to appellant and her children repugnant to the subsequent provision in the will appointing trustees and directing them to pay the income from a one-fourth part of the estate to appellant and the income from the $15,000 trust fund to Louise B. Paulson, since it would be impossible to pay income from the entire trust fund to Louise B. Paulson and also pay income from one fourth of said trust fund to appellant, and impossible to give one fourth of the trust fund to appellant and her children and three fourths to the residuary legatees without absolutely destroying the said trust fund; (3) that since a subsequent provision in a will controls and abrogates a former inconsistent and repugnant provision, the $15,000 trust fund must therefore be considered as a separate and distinct fund and portion of the estate and cannot be considered as included in appellant's one-fourth share under paragraph (9) of the second clause of the will; and, (4) that since neither the will nor either codicil makes any disposition of the *corpus* of this trust, the same passed under the residuary clause in effect at the death of testatrix.

There can be no doubt, as appellees concede, that testatrix, in making the gift to appellant and her children of a one-fourth part of her estate "subject" to certain other designated gifts, namely, "the foregoing legacies, including the provisions for my daughter, Louise B. Paulson," thereby intended to and did exclude entirely from said one-fourth part of her estate the said legacies, including said provisions for Louise B. Paulson. The error in appellant's position is in overlooking the fact that the provision for the daughter Louise, insofar as the trust fund is concerned, consists of a gift to her, during the time she remains unmarried, of the income from said trust fund, and that the *corpus* of the fund, not being included within the provision for her, is, consequently, not excluded from the four-way division of the estate made by the will, wherein testatrix,

in paragraph (9) of the second clause, provided that the one-fourth part thereof should go to appellant and her children, and in paragraph (10) of the same clause provided that the remaining three-fourths should be equally divided among her other three children. This inclusion of the *corpus* of the trust fund in the four-way division of the estate results in no inconsistency or repugnancy between or among any provisions of the will and in no destruction of the trust created for the benefit of Louise during spinsterhood, but merely postpones, until her marriage or death, the possession and enjoyment of the *corpus* of the fund by the legatees thereof. Nor, as appellant seems to think, is one fourth of the *corpus* of the trust fund excluded from the operation of the gift to appellant and her children by the omission of any mention thereof in the language used by testatrix in making said gift. Under this theory, if carried to its logical conclusion, nothing could pass to appellant and her children by the gift in question, since no property whatever is mentioned or designated as being within the operation of the gift. The lower court correctly held that the *corpus* of the $15,000 trust fund was included by testatrix in the four-way division of her estate.

The second contention raised is equally without merit. It is claimed that the gift made by the will to appellant for life with remainder to her children in fee simple is an absolute gift of a one-fourth part of the estate without any reduction or deduction whatsoever from said one-fourth part; that the provisions contained in paragraphs (9) and (9a) of the second clause of the will, cutting down such absolute fee-simple gift, are void because they operate to destroy the estate granted, being a giving and taking back in the same breath, and because such provisions are not sufficiently clear, unambiguous and unequivocal to limit or cut down the fee-simple estate granted by the will to appellant and her children. We are unable to see in the language of these reduction provisions any uncertainty,

ambiguity or confusion of meaning. These clauses of the will in clear and simple language direct exactly how to ascertain the amount, if any, which appellant and her children are to receive from the estate, and also give precise instructions as to when and in what event Mrs. North is to receive a specific legacy and the amount of the same. They do not operate as a limitation upon, or a reduction of, a fee-simple estate, but their effect is to reduce the *amount* and not the *title* of the gift. Any portion of the estate which appellant and her children take, they take in fee simple, and their fee-simple estate therein is not by the reduction clauses reduced to that of a lesser estate. Neither is the specific legacy to Mrs. North, which is provided for in the reduction clauses, a gift over of an executory devise or a remainder of an estate first granted to appellant and her children in fee simple, but is an absolute gift to Mrs. North, in the first instance, in the event that the circumstances exist under which the testatrix directed payment of the legacy to her. There is no room in this case for the application of rules or the citation of authorities concerning remainders, executory devises, or repugnant limitations upon, or reductions of, a fee-simple estate.

Appellant points out that the amount of the gross value of testatrix's estate at the time of her death was $49,000, and that the deductions provided for in the reduction clauses of the will would exceed the one-fourth part of the estate devised and bequeathed to appellant and her children, and that such clauses, if given effect, would render the later provision in the will, appointing trustees and directing them to pay income to appellant, meaningless, nugatory, and absurd; and she argues that therefore under a proper construction of the will, the court should hold that it was the intention of the testatrix by such later provision to abrogate and revoke the previous reduction provisions. The first fundamental rule in all will-construction cases is that the intention of the testator as expressed

in his will must be given effect unless contrary to law or public policy. If the intention of the testator appears clearly and unequivocally on the face of the will, there is no room for construction. A mere reading of the will in this case discloses clearly, not only the intention and purpose of the testatrix in directing the reduction of the share given to appellant and her children and the payment of the specific legacy to her daughter, Elizabeth North, but also discloses clearly her reasons for making such provisions and directions. No other provision, sentence or clause in the will or either codicil thereto revokes, contradicts, or is in conflict with the plain directions of the reduction clauses. Nor is any other language used which even raises a doubt of testatrix's intention concerning the reductions. Neither are the reductions, because they consume the one-fourth part of the estate given to appellant and her children, inconsistent with or repugnant to the other provisions in the will. Such reduction clauses provide that if appellant's husband should pay and discharge the debts and liabilities which testatrix had paid and incurred for him, then there should be no reduction of appellant's share of the estate. Since a testator may give what he pleases to each of his children and may, if he wishes, exclude any child or grandchild from participating in the distribution of his estate, provisions of the character contained in paragraphs (9) and (9a) of the will of the testatrix in this case are a valid exercise of the power to make a will, and full effect should be given thereto.

The remaining questions in the case are more difficult of solution. They require a determination of the proper distribution of the residuum of the estate under the provisions of the original will as modified by the two codicils, and a decision as to whether the testatrix, by the second codicil, revoked the specific legacy given to her daughter, Elizabeth B. P. North, under the provisions of paragraph (9a) of the second clause of the will. We approach a

consideration of these issues bearing in mind that the sole object of our inquiry is to arrive at the intention of the testatrix, which, when ascertained, must control, and that, in ascertaining her intention, decisions in previous cases are not of controlling importance, for the reason that each will-construction case has an individuality of its own, since even the same words, when used under different circumstances and with different context, may express different intentions. *Cahill* v. *Michael,* 381 Ill. 395.

However, there are many well-established rules of construction having for their purpose the ascertainment of the intentions of a testator when, because of the language he used, such intentions do not clearly appear from the will, which rules have been adopted and adhered to by the courts, not as inflexibly controlling the disposition of a testator's estate, but merely as aids invoked by the courts for their guidance in searching for and ascertaining the intent of the testator. We will recur briefly to such of those general principles governing will construction as are pertinent here. The testator's intention must be determined from the language used in the will, but if the language is such that the intention is doubtful, the court may consider the circumstances surrounding the testator when the will was made, as shown by extrinsic evidence, so as to place itself in the position of the maker and glean from the language used in the instrument the intention of the maker in using such language. (*LaRocque* v. *Martin,* 344 Ill. 522.) The intention sought is not that which by inference may be presumed to have existed in the mind of the testator, but that which by the words used in the will he has expressed. (*Pontius* v. *Conrad,* 317 Ill. 241.) It is a fundamental rule that in determining the testator's intention the whole will must be considered and effect given to each sentence, phrase or word, if possible to do so. (*Tripp* v. *Krauth,* 340 Ill. 11.) The testator's intention is to be gathered not from one clause of the will, alone,

but from a view of the will as a whole and all of its parts, bearing in mind the plan of the testator as expressed in the entire will. (*McClure* v. *McClure,* 319 Ill. 271.) The whole scope of the will is to be considered and every provision given due weight to ascertain the plan of the testator in the light of the facts and circumstances surrounding him, his family and his property at the time of making the will. (*Himmell* v. *Himmell,* 294 Ill. 557.) The courts in endeavoring to arrive at the true meaning and intention of the testator incline against any construction of the will which would give double portions to the partial exclusion of others whose claims are equally meritorious. (28 R.C.L. 234, sec. 195.) A will and all codicils thereto are to be construed together as parts of one and the same instrument, (*Pratt* v. *Skiff,* 289 Ill. 268,) the will and all codicils being read together as one instrument of the date of the execution of the last codicil. (*Abdill* v. *Abdill,* 295 Ill. 40.) Furthermore, it is an invariable rule that a codicil will revoke the provisions of a will only to the extent absolutely necessary to give effect to the provisions of the codicil which are repugnant to or inconsistent with those of the will, and if a codicil can be given any operative effect consistently with the provisions of the will, the latter provisions are deemed to be unaffected by the codicil, although the terms of the codicil may on their face, if construed alone, without reference to the will, be sufficient to dispose of property disposed of by the will. *Cronin* v. *Cronin,* 314 Ill. 345; *Clark* v. *Todd,* 310 Ill. 361; *Wardner* v. *Seventh Day Baptist Memorial Board,* 232 Ill. 606; *Hubbard* v. *Hubbard,* 198 Ill. 621; *Vestal* v. *Garrett,* 197 Ill. 398; *Ellis* v. *Dick,* 165 Ill. 637.

Coming now to the question of the proper construction of the will and two codicils before us, we will first consider the will alone and then the effect of each codicil, instead of beginning with a consideration of the will and both codicils as a whole, although it would seem that by

either method the same result would be reached. (Page on Wills, sec. 466.) The intention of the testatrix, her general scope and plan, and the purposes which she was attempting to accomplish appear clearly upon the face of the will without the necessity of resorting to extrinsic evidence. Her purpose and intention were, first, to assure a home and an income to her unmarried daughter, Louise, during spinsterhood; and then to make an equal distribution among her children, placing appellant's share in trust, evidently because of the improvidence of her husband. Her intention to place all of her children upon an equality is clear, and for that purpose she provided that three fourths of the amounts which she had paid and become liable to pay for appellant's husband should be deducted from appellant's share of the estate, so that in the event appellant's husband should not pay his own debts, the loss occasioned thereby to testatrix's estate should be borne by appellant and not by her other children. This desire and intention of testatrix to accomplish an equal distribution among her children, so clearly expressed and so plainly apparent, ought to be carried into execution unless the codicils unequivocally evince that the mind of the testatrix had undergone a change and that she therein made other provisions for the disposition of her estate, entirely inconsistent with, and repugnant to, this former intention.

The original will, in paragraph (10,) gave to testatrix's children, Elizabeth B. P. North, Louise B. Paulson and Norman B. Paulson, each a one-third part of the residuum of the estate, and then in paragraph (10a,) immediately following, made substitutional gifts of the shares given under the provisions of the will to each of said three children, the same taking effect only in the event of the death of any one or more of the said three named children, and then only as to the share given to such deceased child. The first codicil contained no clause or provision directing that the residuary gift of one third each to her three named

children be annulled or revoked, but contained the following provision: "In the event of the death of anyone or more of my children before my death, it is my wish that the remainder of my estate, after paying all bequests and special provisions, according to my will, be divided equally among my surviving children." It is appellant's contention that this provision entirely annulled and revoked the gifts made in paragraph (10) of the will to each of the three children named therein, and that because of the death of Elizabeth B. P. North prior to that of the testatrix, the residuary estate at the death of the testatrix passed under the codicil to Louise B. Paulson, Norman B. Paulson and the appellant, in equal shares, each being entitled to a one-third part thereof.

It must be admitted that the language used in this codicil, standing alone, supports the contention of appellant; but, in accordance with well-settled rules, this provision cannot be considered alone but must be read and construed in connection with the will and the general plan of the testatrix as expressed in her will, bearing in mind that a gift once made by the will is not to be revoked by the codicil unless absolutely necessary to give effect to the provisions of the codicil, notwithstanding that the terms of the codicil, if construed alone without reference to the will, are sufficient to dispose of property disposed of by the will. (*Hubbard* v. *Hubbard*, 198 Ill. 621.) The conflict between the provisions of the codicil and those contained in paragraph (10) of the will is, we think, apparent rather than real, and arises from construing the codicil alone instead of considering it in connection with and as a part of the will.

When the language of the will and codicil are correlated and the codicil construed in connection with the entire will and all its provisions, it clearly appears that the testatrix, by the codicil, intended no revocation of the one-third share of the residuary estate devised and be-

queathed to each of her three children, Elizabeth, Louise and Norman, but intended only to revoke the substitutional gifts of the one-third share of any one or more of them who were not living at the time of her death, and that when in the codicil she directed that in the event of the death of any one or more of her children before her death, the remainder of her estate be divided equally among her surviving children, she meant only the share of the remainder which was given to such deceased child. This interpretation of the codicil is not only in accordance with well-established rules of construction, but is in complete harmony with testatrix's general plan of equity of distribution among her children. As was recently pointed out in *Cahill* v. *Michael,* 381 Ill. 395, this court in construing wills does not hesitate to insert, transpose or disregard words in order to arrive at the true intention of the testator. The case of *Lash* v. *Lash,* 209 Ill. 595, may be cited as one of many instances where this court, in order to effectuate the intention of the testator collected from the context of the will, supplied language which had been omitted by the testator from his will.

The purpose and plan of the testatrix in providing for the disposition of her estate at her death was, as we have seen, to first provide a home and income for her unmarried daughter, and then, subject to said special provisions for the unmarried daughter, that all of her children should share equally in her estate, the indebtedness of appellant's husband to testatrix being borne by the share of appellant and not by the shares of her other children, and that no one or more of her children should have any advantage because of the payment, by either the testatrix or the Norths, of any part of the indebtedness of appellant's husband. Appellant's construction of the codicil would result in appellant and her family receiving one half of the entire estate, one fourth under clause (9) of the will and another one-fourth (being one third of the remaining three-

fourths) under the codicil. This would be double the portion given to each of the other surviving children of the testatrix and would do violence to her general plan for distribution of her estate. Nothing contained in the codicil requires a construction so manifestly repugnant to the intention of the testatrix.

David C. Jackman, an afflicted son of appellant, was born September 25, 1925, which was after the execution of the will and prior to the execution of the first codicil; and appellant insists that in the light of this circumstance, the construction of the codicil which she contends for is justified. She introduced in support of this theory a letter from her mother, dated February 11, 1932, in which she expressed regret that she was not able to do as much for David as she would like to do. However, there is not the slightest intimation contained in the letter of any intention or desire of the testatrix to, in any way, prefer appellant over her other children. The codicil executed after David's birth gave David a legacy of $500, which was more than double the amount given to each of her other grandchildren. This, no doubt, was because of his affliction.

The codicil contains no expression, either in the language used or by necessary implication therefrom, of an intention to revoke the gift of a one-third part of the residuary estate, to each of the three named children who should survive the testatrix and thus disturb the equality of distribution among testatrix's children, which is predominant throughout the entire will; and in the absence of any such expressed or implied intention, we cannot by inference, because of the affliction of David, presume the existence of such an unexpressed and unimplied intention and enforce the same by giving to appellant a double portion of the estate. It might well be that testatrix considered that appellant's husband and her two adult normal children would sufficiently assist in the support of David and that his affliction did not justify an inequality in the

distribution of her estate. The intention of a testator which courts will carry into effect is that expressed by the language of the testamentary instrument. This language will be interpreted in view of the circumstances surrounding the testator, but the court is not permitted to import into the will an intention different from that expressed by its language, however clearly such different intention may be made to appear. *Knight* v. *Knight*, 367 Ill. 646.

A further question is as to the effect of the second codicil upon the specific pecuniary legacy given to Elizabeth B. P. North in paragraph (9a) of the second clause of the will. This legacy was by the will bequeathed to Mrs. North only in the event that either she or her husband, William W. North, had paid some part or portion of the notes of appellant's husband upon which testatrix and North were sureties, and the amount of the legacy was to be the same as the amount paid by the Norths upon said notes and not refunded or returned by either appellant or her husband. It is admitted without dispute that North paid the sum of $11,919.51 upon the notes of appellant's husband and that no part thereof was ever refunded. It is appellant's contention that this legacy of $11,919.51 to Mrs. North was, by the second codicil, revoked and given to appellant, Louise and Norman in equal shares. Appellees insist that this legacy was unaffected by the second codicil and therefore belongs to the children of Mrs. North.

It is evident from the provisions of the will that this legacy to Mrs. North was made for a different purpose and with a different aim and object in view than were the other gifts and legacies made by the testatrix to her children. The sum of $11,919.51, which was paid by North as above stated, was one half of the principal of the notes of appellant's husband upon which North and testatrix were sureties, together with interest thereon. This sum represents the amount of a debt owing to North, not by

testatrix, but by the husband of appellant. It is apparent from the will that this legacy is in a different class than the other gifts made by the will, and that testatrix so regarded it. It is called into existence under the terms and provisions of the will, by the indebtedness of the husband of one daughter to the husband of another, and its effect is to compel the wife of the debtor husband to pay to the wife of the creditor husband the amount of said debt. The testatrix provided that this special legacy to Mrs. North should be paid out of funds deducted from the legacy and devise to appellant and her children, and which funds, except for the said debt to North, would have passed to appellant and her children under the will. This special provision for the benefit of Mrs. North was not taken by the testatrix from her estate as a whole or from funds which otherwise would have been distributed among all her children, as was the special provision made for the unmarried daughter, but was taken from that particular portion of her estate which she earmarked by the will as the portion of appellant and her children. It is clear from the will that the testatrix did not consider this legacy to Mrs. North as any part of Mrs. North's share of the estate, but considered the same as distinctly a part of appellant's share applied in payment of her husband's debt; and there is nothing contained in either codicil indicating that she ever subsequently altered her view in this regard.

Appellant argues with considerable force that the testatrix, by the provision in the second codicil that "owing to the death of my daughter, Elizabeth North, her share of my estate after the payment of the trust fund is to be divided equally among my three remaining children, Louise B. Paulson, Norman B. Paulson and Emma Jackman," could have meant only this special legacy to her daughter, Elizabeth North, inasmuch as the first codicil operated to automatically revoke all her interest in the residuum of

the estate, and there remained nothing upon which this provision of the second codicil could operate other than the special legacy above mentioned. While it is true that a will or codicil must be construed so as to give effect, if possible, to all the language used by the testator and so that no language used therein will be treated as surplusage or rendered void or insignificant, (*Hayden* v. *McNamee,* 392 Ill. 99,) it is also a well-established rule, equally worthy of our respect, that where the terms of a will clearly give an estate, the provisions of a codicil must manifest an equally clear intention to revoke it before they can be construed to have such an effect. (1 Page on Wills, sec. 466.) The plain provisions of the will cannot be taken away or modified by doubtful provisions contained in the codicil. (*Clark* v. *Todd,* 310 Ill. 361; *Tucker* v. *Tucker,* 308 Ill. 371; *Kern* v. *Kern,* 293 Ill. 238.) The legacy in question was a plain gift by the provisions of the will to Elizabeth B. P. North. It cannot be taken away or revoked by doubtful expressions contained in the codicil. Appellant in her reply brief agrees that the law is, as appellees contend, that the words of the codicil revoking the gift must be as clear as the words making the gift, but she seeks to avoid the effect of this principle of construction by arguing that the second codicil did not revoke the legacy to Mrs. North, but merely re-bequeathed it to other legatees. The sophistry of this argument is so apparent it requires no notice. Upon a construction and consideration of the second codicil in connection with the will as a whole and all its provisions, together with the provisions of the first codicil, and bearing in mind that the cardinal rule of testamentary construction in every instance is to ascertain the intention of the testator, we think it clearly appears that the special legacy in question was never considered or intended by the testatrix as a part of Mrs. North's share of her estate, but, although the same was a gift to her from the testatrix, it was intended by the testatrix to be,

and in fact actually was, a part of appellant's share of the estate, and, hence, not affected by either codicil.

Appellant makes one other contention which we should perhaps also notice. She claims that the court erred in construing the will and codicils in accordance with appellees' construction thereof as set out in their answer, and that appellees having filed no counterclaim were entitled to no relief. Appellant's theory evidently is that, because of the absence of a counterclaim, the will and codicils must be construed, if construed at all, in accordance with the construction placed thereon in the complaint. There is no merit in this contention. Appellant's complaint contains eight separate and distinct prayers for relief, two of which pertain to the construction of the will, and refer, of course, to the will as modified by the two codicils. The first prayer asks that the court construe the will of the said Florence B. Paulson, deceased. The second prayer asks that the court construe said will in acordance with .the construction appellant has placed on said will. · Under the first prayer in the complaint the court had the right to construe the will and codicils in such manner as it might find to be correct and proper .notwithstanding the construction contended for in the complaint.

The court erred in holding that the residuary estate of the testatrix should be divided one twelfth to appellant, one third to the personal representative of the estate of Louise B. Paulson, deceased, and one third to the personal representative of the estate of Norman B. Paulson, deceased. This is readily apparent, since all must concede the mathematical truth that one third, plus one third, plus one twelfth cannot equal the whole. The decree of the court below to this extent is reversed. In all other respects, the decree is affirmed.

The cause is remanded to the circuit court of Will county with directions to modify the decree so as to hold and decree that the residuary estate of the testatrix be

distributed, one-ninth part thereof to appellant, four-ninths part thereof to the personal representative of the estate of Louise B. Paulson, deceased, and four-ninths part thereof to the personal representative of the estate of Norman B. Paulson, deceased.

*Affirmed in part and reversed in part and remanded, with directions.*