(No. 31925.

LAUREN VOLLMER *et al.*, Appellants, *vs.* VIRGIL B. Mc-
GOWAN, Exr., *et al.*, Appellees.

*Opinion filed May 24, 1951.*

McMILLEN & GARMAN, of Decatur, (HORACE B. GARMAN, and GEORGE F. LIMERICK, of counsel,) for appellants.

WEILEPP & WILSON, and WAYNE E. ARMSTRONG, guardian *ad litem*, both of Decatur, (JOHN W. DYAR, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiffs, Lauren Vollmer, James D. Vollmer, and Marjorie Robinson, filed their amended complaint in the circuit court of Macon County against the defendant, Virgil B. McGowan, executor of the will of Thomas McGowan, deceased, the two testamentary trustees, and twelve others, seeking a construction of Thomas McGowan's will. The executor, the trustees, and six individual defendants interposed a motion to dismiss plaintiffs' pleading. Two minor defendants made a like motion, the motions were allowed, plaintiffs elected to abide by their pleading, and a decree was entered dismissing the amended complaint for the

want of equity. Plaintiffs prosecute this appeal, a freehold being necessarily involved.

Thomas McGowan, a resident of the city of Decatur, died testate on August 20, 1948. He left surviving as his only heirs-at-law, three sons, Emmett J., Edwin C., and Virgil B. McGowan, three daughters, Nellie F. Talbott, Mary E. Rief and Elizabeth J. White, and three grandchildren, Lauren and James D. Vollmer, and Marjorie Robinson, the children of Katherine I. Vollmer, who predeceased her father on April 5, 1947. McGowan's will was admitted to probate in the county court of Macon County. The estate consists of real and personal property valued in excess of $200,000.

By his will, dated August 17, 1942, McGowan bequeathed all of his household goods and furniture to his daughter, Elizabeth J. White. By article 3, he devised to her the family residence in Decatur. To his daughter, Katherine I. Vollmer, by article 4, he devised the residence occupied by her in Dalton City. Plaintiffs' complaint alleges that, for many years prior to his death, McGowan, a widower, lived in the family residence in Decatur with his daughter, Mrs. White, his son-in-law, and his son, Virgil McGowan; that this property is worth approximately $25,000, and that, on July 1, 1943, the testator conveyed the premises to Mrs. White by a deed which was caused to be recorded on November 6, 1947; that the property devised to Mrs. Vollmer is worth upwards of $10,000; that she and her family resided on the premises from the time of her marriage until her death; that she and her husband farmed a tract of land owned by her father for many years until her husband became ill, and that, thereafter, she farmed the land for her father until shortly before her death when her son, James D. Vollmer, took over the farming of the land for Thomas McGowan.

By article 5, McGowan bequeathed to his three sons, and his daughters, Nellie F. Talbott and Mary E. Rief,

two thousand dollars each "to equalize for the real estate" given to Elizabeth J. White and Katherine I. Vollmer, as stated in articles 3 and 4.

By article 7, the testator directed his executor, after the items described in the preceding articles have been paid or performed, to convert into cash the remainder of his personal property, with the exception of his one-third interest in the partnership of the Kraft Hotel Company—both real and personal—and divide the proceeds equally among his seven children, naming them.

The testator, by the eighth article, devised and bequeathed to two sons, Virgil B. and Emmett J. McGowan, as trustees, the testator's one-third interest in the Kraft Hotel Company—both real and personal—and all of his real estate of which he died seized and possessed. Article 9 authorizes the trustees to manage, rent and control the property. Article 10 directs the division annually of the net income from the trust property equally among McGowan's surviving children. Article 12 grants the trustees power to sell all or any part of the real estate or to dispose of the interest in the Kraft Hotel Company, subject, however, to the condition that the trustees, before making any sale of property held in trust, obtain the consent in writing of a majority of McGowan's seven children or surviving children not under legal disability. Article 12 provides, further, that, upon the completion of any sale of property held in trust, the net proceeds shall immediately be divided among his surviving children, share and share alike.

By the fourteenth article, the trustees are directed to sell and dispose of all the testator's property for cash within five years after the death of his four daughters. Then follows article 15, "In case any child above named should depart this life, either with or without heirs of his or her body, at any time previous to my demise, then and in that case, the surviving children under this Will shall become seized equally of the property specified of such deceased

child or children so departing this life aforesaid, and the property interest so accruing of such deceased child or children under this will."

The next article names Virgil B. McGowan, one of the testator's sons, executor. Virgil B. McGowan, a lawyer, prepared his father's will.

Article 17 provides that in the event any of testator's children shall die after his death leaving lawful issue surviving, then the share of the deceased child shall be divided between the issue of such child *per stirpes*. The eighteenth article makes provision for the appointment of successor trustees by the judge of the county court of Macon County, who is directed by McGowan to follow the wishes of the majority of "my surviving children, then living and not under legal disability," in making the appointment. Article 19 declares lawful the purchase by Virgil B. and Emmett J. McGowan, the trustees, of any part of the trust property, at any public sale or by private contract, provided, in the latter case, that the sale shall be agreed to by "the rest of my children then living who are under no legal disability, and the evidence of such agreement may be either by deed or deeds from the other children who are under no legal disability, or written consent to such private sale signed by all of my surviving children who are under no legal disability at that time."

The last section of the will, article 20, is an *in terrorem* provision. It provides that the distributive share of any beneficiary, who directly or indirectly resists the probate or contests the validity of the will, shall be paid to "my other surviving children, share and share alike."

Plaintiffs alleged that Thomas McGowan was fond of and generous with all of his children and grandchildren, without discrimination; that he died without knowledge of the death of his daughter, Katherine I. Vollmer, more than sixteen months earlier, and that the executor and the trustees claim that McGowan's will excludes them, plaintiffs,

from any right or interest in his property and estate. The complaint charges that the language of the will is ambiguous, inconsistent, uncertain and conflicting; that the will does not exhibit a clear intent by the testator to exclude his grandchildren from participation in the estate, and that the asserted ambiguity can be resolved by either of two constructions,—under one of which they would be entitled to an undivided one-seventh of the trust estate created under article 8 of the will, and under the other they would be entitled to the property specifically devised to their mother by article 4. The relief sought was a decree construing the will of Thomas McGowan according to one of the suggested alternatives.

Plaintiffs state that the single issue presented is, "Does Article 15 of the Will of Thomas McGowan completely disinherit Plaintiffs?"

The cardinal rule of testamentary construction to which all other rules must yield is to ascertain the intention of the testator from the will itself and effectuate this intention, unless contrary to some established rule of law or public policy. (*In re Estate of Reeve,* 393 Ill. 272; *Norton* v. *Jordan,* 360 Ill. 419; *Dahmer* v. *Wensler,* 350 Ill. 23.) In ascertaining the testator's intention, the words of the will are to be read in the light of the circumstances under which the will was made, including the nature, extent and condition of the testator's property as well as his relation to his family and to the beneficiaries named. (*Monarski* v. *Greb,* 407 Ill. 281; *Knisely* v. *Simpson,* 397 Ill. 605; *Dahmer* v. *Wensler,* 350 Ill. 23.) The process of ascertaining the testator's intention requires a consideration of all the provisions of the will taken as a whole and not by isolating certain language without regard to its relation to the entire will. Each part must be read in connection with every other part and with the general plan of the testator. (*Dyslin* v. *Wolf,* 407 Ill. 532; *Monarski* v. *Greb,* 407 Ill. 281; *Jackman* v. *Kasper,* 393 Ill. 496; *Papa*

v. *Papa,* 377 Ill. 316.) Again, the testator's intention must be ascertained from the words of the will itself, and effect must be given to the intention or meaning so expressed rather than to some other intention which, from surrounding circumstances, the testator may be presumed to have had but failed to express. (*Norton* v. *Jordan,* 360 Ill. 419; *Hampton* v. *Dill,* 354 Ill. 415; *Bushman* v. *Fraser,* 322 Ill. 579.) Construction of a will cannot be made to depend upon subsequent facts or conditions arising after the will takes effect, nor can the court surmise what provision would have been made by the testator had he anticipated a change in circumstances surrounding him at the time of the execution of the will. *Gridley* v. *Gridley,* 399 Ill. 215; *First Trust and Savings Bank of DeKalb* v. *Olson,* 353 Ill. 206; *Harvey* v. *Ballard,* 252 Ill. 57.

In the light of these familiar canons of construction, the precise question presented for decision is whether the will of Thomas McGowan clearly indicates an intention to disinherit the children of a child who predeceased the testator. A presumption against disinheritance obtains. Section 49 of the Probate Act ordains, "When a devise or legacy is to a descendant of the testator who dies before the testator and there is no provision in the will for that contingency, the descendants of the devisee or legatee take *per stirpes* the estate so devised or bequeathed." (Ill. Rev. State. 1949, chap. 3, par. 200.) To avoid the application of section 49, it must clearly appear from the will, and the circumstances disclosed thereby, that it was, in fact, the intention of the testator, at the time he made his will, to make provision for the contingency of the death of one or more of his children during his lifetime. (*Schneller* v. *Schneller,* 356 Ill. 89.) Since a testator's heirs cannot be disinherited upon mere conjecture, when the testator seeks to disinherit them he must express his intention clearly, either by express words or by necessary implica-

tion. *Dahmer* v. *Wensler*, 350 Ill. 23; *Pontius* v. *Conrad*, 317 Ill. 241.

Recourse to the provisions of the will of Thomas McGowan discloses an unequivocal intent to disinherit children of any of his seven children who predeceased him. Neither the fairness nor the wisdom of the disinheritance is before us. A testator enjoys the undoubted right to make an unequal disposition of his property, so far as his children and grandchildren are concerned. Indeed, plaintiffs. concede that article 15 reflects an intention to discriminate in some manner against the issue of a child who predeceased the testator but maintain that intent to completely cut them off from participation in the estate of Thomas McGowan is wanting. Defendants' position is that article 15 proclaims an unmistakably clear intention to disinherit children of any of his children who may have predeceased him.

For reasons known only to himself, Thomas McGowan's will anticipated the contingency of the death of a child prior to his own death and provided that the share of the deceased child should go to the surviving children of the testator. Not only is article 15 explicit but articles 10, 12, 18, 19, and 20 each provide for the same contingency. In particular, article 10 commands that the income from the trust property be distributed annually among the surviving children of the testator; article 12 directs the trustees, prior to making any sale of any part of the trust property, to obtain the written consent of a majority of the testator's seven children or surviving children not under legal disability and to divide the net proceeds of any sale among his surviving children, share and share alike; article 18 directs the county judge of Macon County, in appointing successor trustees, to follow the wishes of a majority of "my surviving children;" article 19 provides that, when the trustees purchase trust property by private contract,

314

the sale shall be agreed to by the rest of "my children then living who are under no legal disability," and that the evidence of such agreement shall be either by deed from the other children who are under no legal disability or written consent signed by 'all of my surviving children who are under no legal disability at the time," and article 20 declares that the distributive share of any beneficiary resisting the probate of or contesting the will shall be paid to "my other surviving children." The six references to "surviving children" and the equivalent description in article 19 fortify the conclusion that the testator intended to disinherit grandchildren who are the children of a predeceased child.

Article 17 discloses that when the testator desired to provide for the children of a deceased child he employed appropriate language to accomplish his purpose. This he did by providing that, in the event of the death of a child after his own death, the share of the deceased child shall be divided between the issue of such child *per stirpes*.

Plaintiffs direct attention to the provision of article 15 that "the property specified of such deceased child or children so departing this life aforesaid" shall go to the surviving children, and urge that the quoted words admit of the construction that the specific devise made by article 4, in the event the devisee, Katherine I. Vollmer, predeceased her father, should go to his surviving children. The argument is advanced that the testator did not intend, by article 15, to disinherit the issue of such predeceased child, and, further, that the last phrase in article 15, "property interest so accruing of such deceased child or children under this will," is surplusage and can only refer to the interests of a deceased child so accruing by virtue of the specific devise. Under this construction, plaintiffs would be entitled to one seventh of the trust property, conformably to section 49 of the Probate Act. When the entire will is considered and some meaning attributed to all its

words and clauses, and particularly the specific references in articles 10, 12, 18, 19, and 20, we are impelled to conclude that the use of the phrase "the property specified of such deceased child" was for the purpose of cutting off any participation by the children of a deceased child in property specifically devised in articles 3 and 4. Nor may the words "property interest so accruing of such deceased child" be deemed surplusage. The term "property" is sufficiently comprehensive to include every interest one may have in any and every thing which is the subject of ownership, together with the right to freely possess, enjoy and dispose of the property. (*Metropolitan Trust Co.* v. *Jones,* 384 Ill. 248; *Wickizer* v. *Whitney,* 364 Ill. 125; *Shedd* v. *Patterson,* 312 Ill. 371; *Gillespie* v. *People,* 188 Ill. 176.) The use of the last-quoted phrase cut off participation of the children of a deceased child in property held in trust, the words "property interest" being employed to assure that income from, as well as the principal of, the trust estate be denied to children of a deceased child. This being so, plaintiffs' alternative construction, namely, that article 15 was intended to apply solely to the disposition of the trust estate created under article 8; that article 15 is but one of the uses and purposes upon which the trust is held, applying only to the division and distribution of the trust estate; that article 15 has no application to article 4, and, hence, that plaintiffs are entitled, under section 49 of the Probate Act, to the property specifically devised to their mother by article 4 of the challenged will, must fall. The construction urged would defeat the intent manifested by the testator in his will. Courts are without power, under the guise of interpretation, to change a testator's will or to make a new one for him. *Ickes* v. *Ickes,* 386 Ill. 19; *Johnston* v. *Cosby,* 374 Ill. 407.

For the reasons stated, we are constrained to, and do, affirm the decree of the circuit court of Macon County.

*Decree affirmed.*