**Joan Domke, Plaintiff-Appellant, v. Ethel McCue, Individually, and as Executor of the Will of Agnes S. Graser, Deceased, Dorothy Gerding and Dorothy Sullivan, as Executor of the Will of James H. Sullivan, Deceased, Peter J. Sullivan, et al., Defendants-Appellees.**

### Gen. No. 52,128.

First District, Second Division.

October 15, 1968.

Amended on Rehearing April 29, 1969.

[REDACTED]

LYONS, P. J., dissenting.

[REDACTED]

Ehrlich, Bundesen & Cohn, of Chicago (Russell Bundesen, of counsel), for appellant.

McKinley, Price & Fako, for Ethel McCue, Werner H. Sommers, for Dorothy Sullivan, Wilson & McIlvane, for Dorothy Gerding, and Gregory A. Gelderman, all of Chicago, for Peter J. Sullivan, Marie S. Dunne, Isabell Stephens, Virginia DeTauble, Adele Sullivan and Genevieve Sullivan, appellees. (Paul E. Price, of counsel.)

ON REHEARING

MR. JUSTICE BURKE delivered the opinion of the court.

This appeal is taken from a judgment entered against plaintiff, Joan Domke, on her complaint for the construction of a will.

Testatrix, Agnes S. Graser, died on September 13, 1964, and her will was admitted to probate on October 22, 1964. The pertinent paragraphs of the will read as follows:

"THIRTEENTH: I give and bequeath unto ROSE SULLIVAN, a widow of DR. F. J. SULLIVAN, deceased, now residing [sic] at 4501 North Malden Street, Chicago, Illinois, if living at the time of my death, the sum of FIVE THOUSAND DOLLARS ($5,000.00). In the event of the death of MRS. ROSE SULLIVAN prior to my decease, then and in such event, I give and bequeath unto her daughter, MRS.

HERBERT (JOAN S.) DOMKE, now residing c/o Kane Hospital, Pittsburgh 16, Pennsylvania, if living at the time of my death the sum of ONE THOUSAND DOLLARS ($1,000.00).

. . . . . .

"NINETEENTH: In the event of insufficiency of the assets contained within my estate to pay in full the legacies mentioned in articles first to sixteenth, *inclusive*, then and in such event, the legacies enumerated in the preceding two paragraphs shall lapse and legacies in paragraph [sic] three to fifteen *inclusive* shall be abated pro rata.

"TWENTIETH: All of the rest, residue and remainder of my estate, real, personal or mixed, or [sic] which I may die, [sic] seized or possessed or in any wise entitled to, I give unto ANDREW W. SULLIVAN, now residing at Buena Park Hotel, 4145 Broadway, Chicago, Illinois, if living, otherwise to be distributed equally among my nieces and nephews as enumerated in *Paragraphs 1 to 13* or the survivors thereof." (Emphasis supplied.)

Andrew W. Sullivan, testatrix's brother and only living collateral relative at the time the will was executed, predeceased testatrix and, pursuant to paragraph 20 of the will, the residual estate was to be shared equally by her "nieces and nephews as enumerated in Paragraphs 1 to 13" of the will.

On July 8, 1965, Jean Sullivan, et al., heirs of George Sullivan (who was one of the legatees named in the will and who predeceased the testatrix), filed a complaint to construe the will. Plaintiff entered her appearance in those proceedings, but filed no pleadings nor took any action to establish herself as a residuary legatee or otherwise assert a claim in the estate. Motions to dismiss the Sullivan will construction proceedings were filed by

3

several of the defendants therein; the motions were sustained by the trial court on March 30, 1966.

The executor of the estate elected to construe paragraph 20 of the will to exclude paragraph 13, thereby excluding plaintiff, a niece of the testatrix, from participation in the residual estate. This was reflected in the executor's final account which was filed on August 16, 1966. Apparently on the same day plaintiff filed objections to the final account, contending that the wording of paragraph 20 includes paragraph 13, thereby entitling her to a share in the residual estate. Some of the defendants herein filed answers, together with an affidavit and exhibits, to plaintiff's objections and plaintiff filed a reply thereto.

On October 7, 1966, plaintiff commenced this proceeding for the construction of the will. Her complaint was dismissed on motion of the defendants, the judgment stating in part that "the words 'paragraphs 1 to 13' set forth in Paragraph 20 of the will exclude the plaintiff Joan Domke as a beneficiary of the residuary estate of the testatrix, in light of all the language of the entire will." It was further held that defendants' claim of res judicata and laches on plaintiff's part was without merit. From this judgment plaintiff prosecutes this appeal.

Plaintiff maintains that the word "to" in the phrase "Paragraphs 1 to 13" in paragraph 20 of the will is to be construed as a word of inclusion in keeping with the intention of the testatrix to benefit all her nieces and nephews as manifest by the provisions in the will, and that the trial court erred in construing the word as one of exclusion.

 Courts are without power, under the guise of interpretation, to alter a testator's will or to make a new will for him. Vollmer v. McGowan, 409 Ill 306, 99 NE 2d 337. In every will construction case, the question for the court is "not what the testator meant to say,

4

but what he meant by what he did say." Hull v. Adams, 399 Ill 347, 352, 77 NE2d 706. In Turek v. Mahoney, 407 Ill 476, 95 NE2d 330, the court stated at pages 481 and 482.

> "The intention of a testator is to be ascertained in two ways, either from the words employed by him, to which all rules of construction give way, or by finding his presumed intention gathered by the application of rules of construction applicable to all cases where the meaning is obscure, doubtful or uncertain."

It is apparent that when the testatrix wanted a paragraph to be included within a specific grouping of paragraphs, she employed language rendering it unmistakably clear that such was her intention. Thus, in paragraph 19 she provides that in the event there should be an insufficiency of assets in the estate to cover the legacies set out in paragraphs "first to sixteenth, inclusive," those legacies provided for in "the preceding two paragraphs," i. e., 17 and 18, were to lapse and the legacies provided for in paragraphs "three to fifteen inclusive" were to be abated pro rata.

It is also apparent from an analysis of the entire will that the testatrix had a very exact understanding of her will, its structure and its contents. Paragraph 1 provides that all taxes due by reason of the testatrix's death shall be paid out of the residual of her estate. Paragraphs 2 through 15 contain specific legacies to relatives of the testatrix. Paragraph 2 provides that a stated sum of money go to one of testatrix's nieces to be used for the benefit of testatrix's brother, Andrew, who was her only living collateral relative at the time the will was executed and who was also the primary residual beneficiary named in paragraph 20. Further, of those legacies designated by testatrix to lapse or to abate

5

pro rata in the event of insufficient funds, the legacy in paragraph 2 for Andrew's benefit was not one.

Only those legacies to the more distant relatives and to nonfamily beneficiaries were to lapse or to abate pro rata. The legacies in paragraphs 17 and 18, which were designated to lapse in the event of insufficient funds, were specific legacies to a doctor and to a charity, nonfamily beneficiaries. The legacies in paragraphs 3 through 15, which were to abate pro rata in the event of insufficient funds, were specific legacies to the more distant relatives of testatrix. It should also be pointed out that the only other devise which was not designated to abate pro rata or to lapse for lack of assets in the estate, as the bequest in paragraph 2 for the benefit of Andrew, is contained in paragraph 16 which provides for a specific bequest of money for Masses to be said over a period of years for the repose of testatrix's soul. It is therefore clear that testatrix had a complete understanding of the structure and contents of her will, and that what she did and what she said was what she meant to do and say.

In paragraph 20, testatrix provides that her residual estate be distributed "equally among my nieces and nephews as enumerated in Paragraphs 1 to 13" of the will. In forbearing to employ the word "inclusive" in reference to those paragraphs, she intended a different meaning to be ascribed to that phrase than when she employed the word "inclusive" twice in the preceding paragraph 19. When she said "Paragraphs 1 to 13" she meant what she said.

In 95 CJS, Wills, § 611, page 815, it is stated:

"Use of different words in the will applying to the same subject matter indicates or raises a strong presumption that the testator had in view different results, especially where associated with a qualifying expression in one part of the will that is omitted in the other."

6

See also Edgar County Children's Home v. Beltranena, 402 Ill 385, 84 NE2d 363.

■ We are in agreement with defendants' position that to construe the word "to" to mean "inclusive" would do violence not only to the intention of the testatrix, but also to the generally accepted rules of construction. 86 CJS, page 909, defines the word "to" as a word of "exclusion, unless, by necessary implication, it is manifestly used in a different sense." Our courts of review have uniformly adhered to such construction. See Stearns v. Sweet, 78 Ill 446; Clark v. Ewing, 87 Ill 344; Martin v. New York, C. & St. L. R. Co., 346 Ill App 467, 105 NE2d 122. Plaintiff contends that the decedent desired to treat all of her nieces and nephews with substantial equality and that to bar plaintiff from participation in the residuary estate is patently in disregard of the plan of distribution reflected by the will. However, testatrix placed plaintiff in a separate category from the other nieces and nephews in that plaintiff, under paragraph 13 of the will, is the only niece or nephew to whom a contingent but no specific bequest was made. Plaintiff also contends testatrix intended a class gift to her nieces and nephews under the residual clause, but testatrix limited the beneficiaries thereunder to those "enumerated in Paragraphs 1 to 13."

Plaintiff's claim of the denial of the right to show by extrinsic evidence that the word "to" is a word of inclusion is asserted for the first time in this Court. No extrinsic evidence was pleaded or offered which would support plaintiff's contention that the word "to" was intended by the testatrix to be a word of inclusion. When the court sustained defendants' motion to dismiss, plaintiff did not seek to file an amended complaint in which she might have set forth facts in support of her theory, that the evidence would reflect that a different meaning should be ascribed to the word "to" as used in the will, other than its obvious connotation. See Benson v. Isaacs,

7

22 Ill2d 606, 177 NE2d 209; In re Estate of Leichtenberg, 7 Ill2d 545, 131 NE2d 487. See also Jackman v. Kasper, 393 Ill 496, 516, 66 NE2d 678.

The view we take of the testatrix's will renders it unnecessary to consider the matters raised by defendants with respect to res judicata and laches.

For these reasons the judgment is affirmed.

Judgment affirmed.

McNAMARA, J., concurs.

LYONS, P. J., dissenting:

I cannot concur in the result reached by the majority. At the outset, the defendants argue that plaintiff and/or plaintiff's attorney were guilty of laches, in that plaintiff failed to assert her claim until after the filing of the final account, even though she had full knowledge of the position asserted by the executor and other heirs. Plaintiff argues that the court reached the right conclusion in denying defendants' contentions that laches barred plaintiff's claim.

I agree with plaintiff. The order appealed from specifically found against the defendants on the issue of laches. It is true, as defendants point out, that one, where the ruling of the trial court is correct it is of no consequence that the reason assigned may be incorrect and two, that a judgment may be sustained by any argument and by any basis appearing in the record which demonstrates that the judgment is correct. There is, however, ample evidence in the record to support the finding of no laches by the lower court. Plaintiff's counsel filed an affidavit which stated that affiant was never informed by any party that it was the intention of the testator to exclude Joan Domke; that neither he nor his client was ever furnished a copy of the Illinois Inheritance Tax return, nor advised that plaintiff was being

8

excluded as a residuary legatee until the final account was offered; that affiant never believed it necessary to take any steps to assert her right to distribution and that affiant and his client had no knowledge of any partial distribution other than to Dorothy Sullivan. No affidavits were filed by defendants in the instant case. Furthermore, plaintiff was prepared to offer evidence to support the allegations raised in the plaintiff's affidavit.

The defendants next argue that the failure of plaintiff to assert her rights in the earlier proceedings of Jean Sullivan, et al., to construe the will of Agnes Graser precluded her from filing a second proceeding for a construction of the will. Essentially, the defendants are raising the issue of res adjudicata. The elements of res adjudicata, sometimes referred to as estoppel by judgment, are: (1) the identity of the cause of action; (2) the identity of the parties or their privies; (3) the identity of necessary issues of law and fact; and (4) the entry of a judgment or decree based on a determination of necessary issues.

In the instant case the second element fails in that there was no identity of parties or their privies. The plaintiffs in the first suit by Jean Sullivan, et al., were neither nieces nor nephews of the decedent and were involved in no way in the second suit.

The third element also fails in that there was no identity of factual issues. The first suit resolved one issue, namely, were Jean Sullivan and the other children of George Sullivan entitled to take the share to which George Sullivan, a nephew of the decedent, would have been entitled had he survived the testator. In the second suit, the issue was whether the words "paragraphs One to Thirteen" included paragraph Thirteen, thereby including or excluding plaintiff as a beneficiary of the residuary estate.

9

Furthermore, the order of the trial court specifically found contrary to the defendants' contention, that the bar of res adjudicata did not apply.

Thus, having disposed of the procedural issues raised by the parties the issue of whether the court reached the right conclusion in construing the word "to" as a word of exclusion remains. Plaintiff contends that the word "to" is to be construed as a word of inclusion while the defendants contend that the lower court properly construed it as a word of exclusion.

In 86 CJS, 909, it is stated:

> The word "to" is generally defined to be a word of exclusion unless, by necessary implication, it is manifestly used in a different sense. However, "to" is not necessarily a term of exclusion, and it is sometimes used in an inclusive sense, that is, as a word of inclusion, and thus it may have either an inclusive or an exclusive meaning, and in each case the meaning which will be attributed to it will depend on the subject matter and the manifest intention with which it is used.

In Black's Law Dictionary, 4th ed, the word "to" is defined thusly: "This is a word of exclusion when used in describing premises; it excludes the terminus mentioned. . . . It may be a word of inclusion. . . ."

It is plaintiff's position that the will is ambiguous and to find the intent of the testatrix, the entire will, including the scheme of distribution, must be examined. It is defendants' position that there is no ambiguity in the will and that the intent of the testator can be found by the plain language used by the testator.

The defendants contend that the use of different words in the will applying to the same subject matter indicates, or raises a strong presumption, that the testator had in mind different results, especially when associated with a qualified expression in one part of the will which

10

is omitted in the other. The defendants point out that in Paragraph 19 the language "First to Sixteenth inclusive" and "Third to Fifteenth inclusive" was used by the testator and that in Paragraph 20 the language "One to Thirteen" was used without the use of the word "inclusive" and that testator intended a different meaning.

In 95 CJS, 815, it is stated:

> Use of different words in the will applying to the same subject matter indicates or raises a strong presumption that the testator has in view different results, especially where associated with a qualifying expression in one part of the will that is omitted in the other.

This rule finds recognition in Edgar County Home v. Beltranena, 402 Ill 385, 84 NE2d 363 (1949), where the court said:

> The testator must be considered to have used language with ordinary intelligence, and if he did so he clearly would not adopt these different modes of expression without intending a difference of meaning. It is only by recognizing the latter terminology as mere precatory expressions that an inconsistency can be avoided.

Plaintiff contends that this rule of construction applies only when the intent of the testator is clear and not when the will is ambiguous. Plaintiff argues that if the decedent had so clearly in mind what she meant, then following her prior language in Paragraph Nineteenth, she undoubtedly would have said in Paragraph Twentieth: ". . . among my nieces and nephews as enumerated in paragraphs 1 to 12 inclusive." I agree. It is apparent that the testatrix thought of the word "to" as a word of inclusion in Paragraph Nineteenth and it is reasonable to assume that she did not think otherwise in Paragraph Twentieth. If, in fact, she had thought

11

of the word "to" as a word of exclusion, certainly she would have stated in Paragraph Nineteenth, ". . . in Articles First to Seventeenth," and ". . . and legacies in Paragraphs three to sixteen."

The pleadings, however, in the instant case consisted of plaintiff's complaint for construction of the will and the defendants' motion to dismiss the complaint. I would hold that it was improper for the trial court to dismiss the complaint. The motion to dismiss should have been denied and the defendants given the opportunity to answer the complaint. This would have allowed the parties to introduce evidence of the testatrix's intent.

In arriving at this conclusion, I take notice of the fact that decedent's will was prepared by the same lawyer who is of counsel on the defendants' brief and who referred to the words in Paragraph Twentieth of the decedent's will as Paragraphs 1 and 13, in his motion to dismiss the amended complaint and the second amended complaint in the first supplemental proceeding. This and other facts would undoubtedly be brought out by plaintiff in the hearing regarding the construction of the testatrix's will.

For the above reasons I would reverse the judgment of the lower court and remand for further proceedings to determine the testator's intent.