Ella F. Bostwick and Continental Illinois National Bank and Trust Company of Chicago, as Trustees under the Will of F. M. Bostwick, Deceased, Appellees, v. Ella F. Bostwick et al., Appellees. Fisher T. Bullard, Appellant.

**Gen. No. 40,550.**

Opinion filed June 30, 1939.

JOHN F. MANIERRE, of Chicago, for appellant.

JOHN F. E. HIPPEL, FRANKLIN SPENCER EDMONDS and EDMONDS, OBERMAYER & REBMANN, of Philadelphia, Pa., for appellee Ella F. Bostwick.

GOTTLIEB & SCHWARTZ, of Chicago, and HOUSE, GROSSMAN, VORHAUS & HEMLEY, of New York, N. Y., for appellee Charles William Hlavac; HARRY E. SMOOT, of Chicago, and N. RANSON, of New York, N. Y., of counsel.

CHARLES J. BRECK, of New York, N. Y., for appellee Frances B. Mehmel.

HARRY FLECK, of Chicago, for certain appellees.

WILSON & McILVAINE, of Chicago, for certain other appellees; WILLIAM B. McILVAINE, JR., and KENNETH F. MONTGOMERY, of Chicago, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

The trustees of the last will and testament of F. M. Bostwick, deceased, filed a complaint seeking the construction of certain parts of the will. The particular question is whether a bequest to the "heirs" of three named daughters of the testator's sister should be construed so that the surviving husband of one of the daughters, who died leaving no children, take his wife's share, or should the share go to one of the daughters named, who is living, and the children of the other daughter who died. The trial court held that the husband of neither of the two deceased daughters was included within the term "heirs" and that the undistributed income, amounting to approximately $7,000, should be distributed to the surviving daughter and the two surviving children of the deceased daughter.

Fisher T. Bullard, the surviving husband of Anna Bullard, claiming to be the sole heir at law of his deceased wife, appeals, contending he should receive the

share to which his deceased wife would be entitled were she living.

F. M. Bostwick died May 23, 1929, and his will was admitted to probate July 3rd of the same year. The provisions of the will dealing with the residuary estate are as follows:

"IV. The balance of my property, real and personal, of every description shall be divided, one-half to be given to my wife (including therein $50,000 already given to her) to be hers absolutely, the balance to be placed in trust, the net income from which, after trustees expenses and compensation, to be paid as follows:—

"One-half to my wife, Ella F. Bostwick, during her lifetime. One-half to my sister, Lizzie B. Wadley, or in the event of her death, then such portion of income shall be divided and paid equally to her three daughters, Anna Lillian Bullard, Frances B. Mehmel and Mary Emily Hlavac or their heirs.

"V. At the death of my wife the entire income from my estate shall go to my sister, Lizzie B. Wadley, or her heirs, in the manner set forth in Article IV hereof.

"VI. The trust shall continue for ten years, provided my wife is not living at the end of that period. If she shall still be living then the trust shall continue until her death when it shall be dissolved and the principal given to my sister, Lizzie B. Wadley, or in case of her death, divided equally between her three daughters, mentioned in Article IV or their heirs." The last three words of Article IV—"or their heirs"—is the subject matter of this controversy.

The testator's wife, Ella F. Bostwick, is still living and is receiving her half of the income. Lizzie B. Wadley, the sister of the testator, who by Article IV was to receive the other half of the income, died March 4, 1936, thus terminating her life interest. Frances B. Mehmel, one of the three daughters of Lizzie Wadley, is still living. Mary Emily Hlavac died December 9, 1933, leaving surviving two children and a

husband, Charles Hlavac, who disclaims any interest in the share of his deceased wife. Anna Lillian Bullard, an adopted daughter of Lizzie Wadley, died March 23, 1933; she never had any children and left her surviving Fisher T. Bullard, her husband, who is claiming her share as her only heir.

The other defendants, including Ella F. Bostwick, testator's widow, oppose the claim of Fisher T. Bullard upon the theory that "or their heirs" appearing at the end of Article IV does not mean persons designated under the statute of descent (ch. 39, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 110.193–110.204]) which includes husbands as heirs, but should be limited to blood heirs or descendants. Fisher T. Bullard's theory is that the words "or their heirs" must be given a legal meaning under the statute of descent, and that he is, therefore, the only heir of Anna Lillian Bullard and entitled to her share. He also contends that the court improperly permitted the introduction of extrinsic evidence concerning the surrounding circumstances at the time the will was executed, which evidence substantially influenced the court in finding against his claim.

The evidence to which Bullard objects was intended to show who was the author of the language used in the will, the argument being that the language was that of a layman and not of one versed in the law.

The word "heirs" appears three times in the provisions of the will under consideration. Article IV provides that upon the death of testator's sister, Mrs. Wadley, her share of the income of the trust shall be divided equally among her three daughters, naming them, "or their heirs." Article VI provides that upon the dissolution of the trust the principal is to go to Mrs. Wadley, or in the event of her death to be divided among her three daughters, "mentioned in Article IV or their heirs." But Article V provides that at the death of the testator's wife the entire income shall go to Mrs. Wadley "or her heirs, in the manner set forth

in Article IV.'' Manifestly the word ''heirs'' as thus used in Article V refers to the three daughters named in Article IV and referred to in Article VI, and not to the husbands of such daughters who would not be heirs of Mrs. Wadley. So that, in view of the rule that words occurring more than once in a will are presumed always to be used in the same sense (*Abrahams v. Sanders*, 274 Ill. 452, 458) the sense in which the testator used the word ''heirs'' is in doubt, and, as a general rule, evidence to explain the meaning of doubtful language used in a will is admissible. (*Dell v. Herman*, 365 Ill. 261, 264; *Rettig v. Zander*, 364 Ill. 112, 120, and many other cases.

The evidence introduced as to the surrounding circumstances was intended to ascertain whether the will was drawn by a layman or by a lawyer, presumably versed in the technical meaning of the words used. It might be said in passing that the presumption that a lawyer, in drafting a will, invariably uses with mathematical precision the necessary technical words, is contradicted by daily observation and experience.

Counsel for Bullard argues that the words ''or their heirs'' were used in a strictly technical, legalistic sense, because the language of the entire will indicates it was drawn by a lawyer. His opponents argue to the contrary. The evidence on this point is somewhat ambiguous. Mrs. Bostwick was asked who prepared the will, and answered, ''Charlie Wadley''; she was then asked who wrote the will, to which she replied, ''Mr. Bostwick.'' Mr. Bostwick was assistant general superintendent of the Pullman Company, not a lawyer. Charles A. Wadley, his sister's husband, who apparently had something to do with the composition of the will, was a close friend of the testator but there is no direct evidence that he was a lawyer. But whether or not the verbiage of the will is that of a lawyer is not of decisive importance. The court properly admitted this evidence for what it was worth.

In *Black v. Jones*, 264 Ill. 548, the court said in speaking of the construction of the words ''heirs at law''

used in a will drawn by a lawyer, that presumptively they are used in their technical sense, but that this presumption "has never been resorted to where to do so would be to defeat the intention of the testator as expressed in his will," and that it is fundamental in construing wills that the court should, if possible, give effect to the true intention and meaning of the testator as expressed in the language used in his will, "and this is to be ascertained from a consideration of the will in all of its parts and details, bearing in mind the scope and plan of the testator as expressed by the whole will." (Citing cases.) While the words in question used in Article IV and VI might cloudily indicate the intention to use the word "heirs" as including the husbands of the named daughters, yet the same word, "heirs," used in Article V excludes them, as manifestly neither Charles William Hlavac, the surviving husband of Mrs. Wadley's daughter Mrs. Hlavac, nor Fisher T. Bullard, surviving husband of Mrs. Bullard, daughter of Mrs. Wadley, could be considered as the heirs of Mrs. Wadley. We hold the testator intended that in case of the death of any of the three named daughters, the heirs of Mrs. Wadley, only the heirs of Mrs. Wadley should take, which would exclude the husbands of the deceased daughters.

This construction finds support in *Belleville Sav. Bank v. Aneshaensel*, 298 Ill. 292, where it was said: "This court has not hesitated to hold that the widow or the husband will not be included under the designation 'heirs' or 'heirs-at-law,' notwithstanding the provisions of our statute, where the facts are such that we are not bound by any rule of law or of property to make a different ruling."

Moreover, the testator designates what persons were covered by the words "or her heirs" by naming them in Article IV, and the husbands of none of the daughters named appear. Applicable is the language in *Pollock v. Pollock*, 328 Ill. 179, 192: "A technical construction of words and phrases will not be carried to

the extent of defeating the obvious general intention of the testator.'' (Citing cases.)

Among other points made by counsel for Fisher T. Bullard is that testator could not have used the word ''heirs'' as meaning ''blood heirs'' for the reason that Anna Lillian Bullard was an adopted daughter of the Wadleys. The mother and father and two brothers of the testator died in the yellow fever epidemic in Memphis, Tennessee, in 1877, leaving him with a young sister, Lizzie, to whom he devoted himself; this sister afterward married Charles A. Wadley, a close friend of the testator. As we have said, apparently Wadley assisted the testator in composing the will. Two children were born to Mrs. Wadley and in 1901 the Wadleys adopted Anna Lillian who afterward married Fisher T. Bullard. Evidently the testator and the Wadleys treated the adopted daughter, Anna Lillian, as a blood relation, and there is every indication that in drawing the will she was so treated and given the same standing as was given the other two daughters. There is no suggestion that it was intended to distinguish between them in any way.

This is another case emphasizing how little help decisions are to a court in attempting to construe a will. As was said in *Boyle v. John M. Smyth Co.*, 248 Ill. App. 57, 70, ''. . . decisions upon will construction cases are of less value as guides or authorities than is the case in any other subject of the law. . . .'' Counsel, representing different interests in this case, have largely attempted to demonstrate their respective claims by citing cases or presenting arguments tending to support their respective positions with mathematical certainty. This cannot be done. We can only conclude from the relations between the testator, his widow and Mr. and Mrs. Wadley, that the intention of the testator was that one-half of the income from the trust should go to those who inherited through his sister, Mrs. Wadley.

Other considerations lead us to the conclusion that the trial court correctly construed the will in holding

that neither of the husbands of the two deceased daughters should be included within the term "heirs," and that the decree of the trial court ordering distribution accordingly of the undistributed income in the hands of the trustees was proper, and it is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.