(No. 30325. )

CARL HULL, Appellant, *vs.* ETHEL ADAMS *et al.,* Appellees.

*Opinion filed January 22, 1948—Rehearing denied March 15, 1948.*

ANDREWS & ANDREWS, WILLIAM C. EWAN, and JAMES N. CUMMINGS, all of Kewanee, for appellant.

MARTIN E. O'CONNOR, and CHARLES W. BLACHINSKY, both of Kewanee, for appellees C. S. Eastman *et al.*

·CARL A. MELIN, and LEONARD W. TELLEEN, both of Cambridge, and GREGG A. YOUNG, of Kewanee, for certain other appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Thomas B. Grubbs died testate May 6, 1912. He left surviving him Mary J. Grubbs, his widow, and Alice T. Mankin, his daughter and only descendant. At the time of his death, besides owning some personal property, the nature and amount of which do not appear, he owned a farm of 160 acres in Henry County and also a home in the city of Kewanee in that county, whereon he resided with his wife, his daughter and his daughter's husband.

His last will and testament was executed April 11, 1907, and, except for the attestation clause and the clause appointing an executor, is as follows:

"I, Thomas B. Grubbs, of the City of Kewanee, County of Henry and State of Illinois, being of sound mind and memory, do make and publish this my last will and testament, hereby revoking all former wills by me at any time heretofore made.

As to my worldly estate, and all the property, real, personal and mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, I devise, bequeath and dispose thereof in the manner following, to-wit:

First: My will is, that all my just debts and funeral expenses shall, by my executor hereinafter named, be paid out of my estate, as soon after my decease as shall by him be found convenient.

Second: I give and bequeath to my wife Mary J. Grubbs, during her natural life, my present home known as No. 706 Cambridge Street, in the City of Kewanee, Henry County, Illinois, together with all personal property of whatever kind or nature I may own or be entitled to at the time of my decease.

Third: I give and bequeath to my daughter Alice T. Mankin for and during her natural life, my farm in Burns Township, County of Henry and State of Illinois, provided, however, that I make it a condition, for this bequest, that she my said daughter pay to my wife the sum of three ($300) dollars annually, the first payment to be made on the first day of March next after my decease, and to continue during the life of my wife.

Fourth: My will is, that at the decease of my said wife, that whatever personal property she may be possessed of, together with my present home on Cambridge Street, shall be, and I hereby devise and bequeath to my said daughter for her own use forever.

Fifth: It is my will and I hereby direct that should my said daughter and her husband, Norval W. Mankin, part and cease to

be man and wife, that the expenses incurred by him in erecting any buildings or other permanent improvements on my said farm shall be paid to him by my said daughter after such separation or parting, my intention being, that he shall have no claim against my said farm or interest therein should they so part or separate.

Sixth: It is also my will, that after the decease of my said daughter, should she die without leaving issue surviving her, that in such a case I hereby order and direct that my said farm be sold and converted into cash, and after the payment of all necessary expenses that the proceeds of said sale be divided between my legal heirs in accordance with the laws of descent of the State of Illinois."

Upon the death of the testator, his daughter took possession of the farm and paid to her mother, Mary J. Grubbs, the sum of $300 each year until the death of the mother, which occurred October 15, 1928. The daughter, Alice T. Mankin, died testate March 6, 1942, leaving no issue surviving. She was then a widow, her husband Norval W. Mankin, having predeceased her. Her will directed that the farm in question be sold by her executors and the proceeds of the sale, together with all other assets of her estate, used in paying the bequests in her will.

On May 1, 1942, Carl Hull, one of the descendants of a deceased brother of the testator, Thomas B. Grubbs, brought this suit in the circuit court of Henry County to obtain a construction of the will of Thomas B. Grubbs, deceased, and also to compel a sale of the farm devised by the sixth clause of the will and a division of the proceeds among those persons living at the death of Alice T. Mankin who would be the heirs of Thomas B. Grubbs if he had died at that time, or, in the alternative, for a partition of the farm among such persons. The executors of the will of Alice T. Mankin, deceased, and the legatees under her will appeared and answered, claiming the farm was the sole and individual property of Alice T. Mankin and was a part of her estate. The court decreed that at the time of her death Alice T. Mankin was the sole beneficiary under the sixth clause of the will of Thomas B. Grubbs, that

upon her death the interest vested in her as such beneficiary was disposed of by the terms of her will, and that no persons other than the executors of her estate and the devisees and legatees under her will have any interest in the farm in controversy. The plaintiff brings. the cause here on direct appeal. The decree established title in fee simple to the farm in question in Alice T. Mankin, deceased, and the appeal therefrom necessarily involves a freehold.

The decisive issue made by the pleadings and argued on this appeal is whether the words "my legal heirs" in the sixth clause of the Grubbs will mean, as appellant contends, those persons who would have been his heirs as though he had died immediately after the death of the life tenant, or whether such words mean, as appellees contend, the heirs of the testator at the time of his death. It is a general rule of testamentary construction that a gift of a future interest to the testator's "heirs," "heirs-at-law" or "legal heirs" is construed as a gift to such persons as are his heirs at the time of his death, unless the intention of the testator to refer to those who would be his heirs had he died at a subsequent time is clearly manifested by the will. (*Brumsey* v. *Brumsey,* 351 Ill. 414; *Pereboom* v. *Cloyd,* 317 Ill. 85; *Kellett* v. *Shepard,* 139 Ill. 433.) This construction or definition is not changed by the fact that a life estate may precede the bequest to the heirs-at-law, nor by the circumstance that the bequest to the heirs is contingent on an event that may or may not happen. (*Kellett* v. *Shepard,* 139 Ill. 433.) Nor does it make any difference in the correctness of this construction whether the heirs are living or dead when the period of distribution arrives, or whether the gift to the heirs is a bequest of personalty or a devise of real estate. (*Kellett* v. *Shepard,* 139 Ill. 433.) It is further definitely established (*Himmel* v. *Himmel,* 294 Ill. 557,) that a life tenant who is the testator's sole heir is not because of that fact prevented from taking the remainder in fee upon or after his own

death, under a gift to the testator's heirs contingent upon the death of the life tenant without issue surviving.

But, as pointed out in all of the cases above cited, a devise to the testator's heirs will not be construed as meaning a devise to those who are his heirs at the time of his death, although such construction would be *prima facie* correct, if it appears from the will, construed as a whole and with reference to all its provisions, that the testator used the words in an artificial sense as referring to those persons who would have been his heirs had he lived until some future time or until the happening of some subsequent event. While the general rule is that the heirs of a testator mentioned in the will are to be ascertained as of the time of his death, yet this is merely a rule of construction and gives way to a contrary intent to be found in the will.

It is always the intent of the testator, to be gathered from the will, which the court seeks to find, and which, when found, will be given effect unless contrary to public policy or some established rule of law. The purpose of testamentary construction is to arrive at the intention of the testator as expressed in the will and not to discover an intention which the testator had in mind but failed to express. The question for the court to determine in every will construction case is not what the testator meant to say, but what he meant by what he did say.

With these fundamental principles in mind, we turn to an examination of the will of Thomas B. Grubbs to determine both what the testator intended to do and what he did do by way of disposing of his farm in Henry County. The testator made an entirely different disposition of this farm from that of all his other property. By the third clause of the will he devised a life estate to his daughter, and in the sixth clause he disposed of the remainder in the event his daughter should die leaving no issue surviving. No disposition was made of the remainder after the termination of the daughter's life estate in the event she

should at her death leave issue. Until her death it was uncertain whether the remainder created by the sixth clause would ever come into possession and until that time the remainder was contingent; but upon her death the uncertainty was solved. Until that time, until the vesting of the remainder or the determination of the impossibility of its vesting, the reversion in fee, subject to the taking effect of the contingent remainder, rested in Alice T. Mankin, the daughter, to whom, as the sole heir of the testator, it had descended at his death as intestate property. If she had died leaving issue, then the remainder created by the sixth clause of the will would have been destroyed by reason of the failure of the contingency upon which it was to take effect, and the reversion vested in her would have thereby ripened into an indefeasible fee-simple estate in possession, free of any contingency. And, for that reason, appellant maintains it is unreasonable to suppose that the testator intended by the words "my legal heirs" in the sixth clause of the will to refer to his daughter, who was, both at the time the will was executed and at the time of his death, his only heir-at-law, and under that designation give her if she died without issue exactly the same estate in fee simple which she would take if she died leaving issue.

The preliminary statement of the testator contained in his will that he devised, bequeathed and disposed of all his property "in the manner following" indicates that he intended to provide for the disposition of the remainder in the event his daughter should die leaving issue and did not realize that he had neglected to do so. It is consistent with the language of the will as a whole to believe that the testator in providing for the disposition of the farm upon the death of his daughter without issue did not contemplate or realize that the farm would descend as intestate property in the event of her death leaving issue, but that he intended in such event for the property to go to her surviving issue and had overlooked the fact that he had

failed to make the gift to such issue. Therefore, the fact that the daughter, if she should die leaving issue, would take the fee is no indication that the testator intended by the words "my legal heirs" in the sixth clause of the will to refer to those persons who would have been his heirs had he died immediately after the death of his daughter. Neither do we think that any assistance in ascertaining the meaning which the testator applied to the words in controversy is furnished by the provision in clause 3 directing the daughter, as a condition of the gift to her of a life estate, to pay to her mother the sum of $300 annually during the life of the mother. This provision indicates clearly, in our opinion, nothing other than a natural belief on the part of the testator that his daughter would survive her mother, which belief was justified under the facts and circumstances shown by the record, since she actually did survive her mother more than thirteen years.

Both appellant and appellees rely upon the fifth clause of the will to support their respective contentions concerning the construction of the sixth clause. The fifth clause provides that if the daughter and her husband should part and cease to be man and wife, she is, in that event, to reimburse her husband for expenses incurred by him in erecting any buildings or other permanent improvements on the farm, and this provision is immediately followed by the statement "my intention being that he shall have no claim against my said farm or interest therein should they so part and separate." Appellees' theory is that the fact that the testator expressly provided his son-in-law should have no interest in the farm if he and his wife should be divorced, but made no provision preventing him from having an interest in the event they continued to live together as husband and wife, clearly indicates that the testator contemplated that upon his daughter's death her surviving husband would be entitled to an interest in the land, and therefore did not intend by his use of the words "my legal heirs,"

to exclude the daughter as an heir, since if she did not take the property as heir, she would have nothing to be transmitted through her to a surviving husband. Appellant's theory is that the purpose of clause 5 was to protect the farm from a possible lien, prevent it from being divided between the daughter and her husband in divorce proceedings and keep it for the Grubbs family in the event of his daughter's death without issue.

Appellant argues at length that the fact of the life tenant being the testator's sole heir is, of itself, a strong indication that the gift of the remainder to the testator's heirs was intended to mean that such heirs should be ascertained as of the death of the life tenant, and contends that where, as here, the life tenant is the sole heir, very slight indication of testamentary intent is sufficient to overcome the presumption that the testator used the word "heirs" in its normal and natural meaning, that is, as designating those persons who were his heirs at the time of his death. This question received an exhaustive consideration in *Himmel* v. *Himmel*, 294 Ill. 557, where the subject was examined with great care. In that case the testatrix devised all of her real estate for life to her son, who was her only heir, and then provided that the remainder should vest in fee simple in the issue of the son surviving him, but "should he die without leaving issue surviving him, then it is my will that such real estate revert and go to my heirs as if no will had been made." The son survived the testatrix and died without issue. The controversy was whether the devise of the remainder was to those who were the heirs of the testatrix at the time of her death or whether her heirs to whom the remainder was given were to be ascertained at the termination of the life estate, which would exclude the son and his heirs. It was held by this court that such heirs were to be ascertained as of the death of the testatrix, and that as the son was then living and was her sole heir, therefore upon his death without issue, the remainder, lim-

ited to the heirs of the testatrix in such event, passed to the deceased son as the sole heir of the testatrix, and not to those who would have been her heirs had she died at the termination of the son's life estate.

From the decision in the *Himmel case,* the following general propositions, which this court has never overruled or modified, may be safely deduced as applicable in cases where the sole heir is given a life estate and the remainder upon his death without issue is devised to the testator's heirs: The presumption is that the word "heirs" as thus used in the will is intended to mean those who are the heirs of the testator at the time of his death, unless it is plainly manifested in the will that the testator intended to refer to those who would be his heirs had he died at the termination of the life estate, then in such case the word is to be construed as having that meaning and the intention of the testator given such effect. We do not find, however, from the language in the will in the instant case that such manifestation is evident. The fact that the life tenant is the sole heir of the testator does not, of itself, establish that the testator used the word to indicate those who would be his heirs had he died at the termination of the life estate, but such fact may be considered, along with other facts, in determining the intent of the testator as to the time when his heirs are to be ascertained.

An attempt is made to distinguish the will in the *Himmel case* from the one now before us, by reason of the fact that there the words "my heirs" were followed immediately by the further language "as if no will had been made," while the will we are now considering contains no such expression. This is no sound basis for distinction. A gift either to the testator's heirs or to his heirs "as if no will had been made" is the same gift in either instance.

It is also argued that the absence of any words of gift or devise, other than the direction to sell the farm and divide the proceeds, unaccompanied by an express gift,

strongly indicates that the testator intended that his heirs who were to receive such proceeds should be ascertained as of his daughter's death. It is a general rule that where the donees of a testamentary gift constitute a class, and the only words importing the gift are found in the direction to divide, distribute or pay or to sell the property and distribute or pay over the proceeds in the future, the gift will not vest until the time arrives to pay, divide or distribute, and the members of the class who are to take are to be ascertained at that time and not at the death of the testator. It is invoked by the courts to aid in determining the vested or contingent character of future estates. In many cases it is a great help in ascertaining who are entitled to take by the terms of the will to know whether the gift is vested or contingent. As often announced by this court, a contingent remainder is an estate limited to take effect either to dubious and uncertain persons, or upon a dubious and uncertain event. (*Carter* v. *Lewis,* 364 Ill. 434; *Hoblit* v. *Howser,* 338 Ill. 328.) There are thus two kinds of contingencies, contingencies of the person and contingencies of the event. A contingent remainder exists where, under the terms of the devise or grant, there is either no definite or ascertained person in existence who could take if the particular estate were to determine at once, or where, although the person who is to take is definite and ascertained, some contingency or event must occur at or prior to the termination of the particular estate in order to enable such remainderman to take. If the contingency is one of event, the death of the owner of the future interest before the remainder limited to him takes effect in possession does not cause it to fail, unless the contingency in question is that the owner of the future interest shall survive until some future time or after some future event. (3 Page on Wills, p. 686.) Since a contingent remainder is not an estate, but merely the possibility of acquiring one, it cannot be levied upon by legal process or conveyed voluntarily,

except by way of estoppel; but where the person who is to take' the remainder after it becomes vested is ascertained, and the contingency upon which it is to vest is not in respect to the person but the event, it will pass to the heirs of such contingent remainderman upon his death before the happening of the contingency, or it may be devised by him or released by him to the reversioner. *DuBois* v. *Judy,* 291 Ill. 340.

In this case we see no necessity for invoking rules of construction to determine the nature of the remainder creted by the sixth clause of the will. We are not here concerned with the contingent or vested character of such future estate, but the question for our determination is to whom did the testator refer when he mentioned his legal heirs in said clause of his will.

We have set forth above the entire will of Thomas B. Grubbs, except the clause appointing an executor and the formal concluding clause; and upon a careful consideration thereof, in connection with the applicable principles of testamentary construction as hereinbefore announced, we are unable to discover therefrom any intention on his part to designate those persons who' would be his heirs had his death occurred after that of his daughter as the persons who were to take the real estate, or the proceeds arising from a sale thereof, upon the termination of his daughter's life estate. In the absence of such intention to be drawn from the context of the will, we are not warranted in giving to the words "my legal heirs," used by the testator, a meaning other than the natural and legal import thereof.

The parties have argued at length the question whether the widow of Thomas B. Grubbs was one of his heirs. There is nothing in the record to show whether she died testate or intestate or who were her heirs at the time of her death. Counsel for both sides have treated her estate as intestate and the daughter, Alice T. Mankin, as her only heir-at-law. We can readily conceive of a state of

facts in which this question would become important; yet, under the circumstances, as both parties assume them to be, it can now be of little importance, since the same parties, in either case, will take.

The fact that the testator directed the farm to be sold and the proceeds divided does no more than to work an equitable conversion, and the gift, technically speaking, becomes a bequest instead of a devise, but the right of the beneficiaries therein is the same in either instance.

The circuit court construed the will correctly, and its decree is affirmed.

*Decree affirmed.*