Frank J. Costello, as Trustee Under Last Will of Thomas H. Costello, Deceased, Plaintiff-Appellee, v. Rose Mary Costello Warnisher et al., Defendants-Appellants. Mabel M. Costello, Individually and as Administratrix of Estate of Frank J. Costello, Deceased, Impleaded Defendant-Appellee.

Gen. No. 46,111.

First District, Second Division.

February 15, 1955.

Released for publication March 7, 1955.

Russell Packard, of Chicago, for defendants-appellants.

Wilson & McIlvaine, of Chicago, for impleaded defendant-appellee; Calvin F. Selfridge, and Peter A. Dammann, both of Chicago, of counsel.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a decree of the superior court of Cook county dismissing what appellants call a bill of review. The bill seeks to modify a decree previously entered in the same case. That decree construes the will of Thomas H. Costello who died August 4, 1926, and provides for distribution of funds derived from the sale of the corpus of a trust thereby created. The will is long and complicated. Among its many provisions, Section Fifth establishes a trust consisting solely of all the shares of capital stock of Weber Costello Company owned by the testator. It further provides that the income from the trust shall be paid to the tes-

tator's children from time to time surviving until termination of the trust, and then follows paragraph (b), which being the center of the controversy, we quote in full:

"At any time after my death, and upon the written request of all of my children who are living and under no legal disability when such request is made, the trustees shall sell and dispose of said stock and pay the proceeds thereof per stirpes to my descendants who are then living."

On July 9, 1951, Frank J. Costello was the only surviving child of the testator. He was also one of two trustees under the trust. The appellants are grandchildren of the testator (the children of a deceased son) and on the above date were the testator's only other surviving descendants. Thus at that time Frank Costello was entitled to make the request referred to in Section Fifth (b). This he did on July 9, 1951. Thereafter he negotiated for the sale and on August 4, 1951, as sole trustee (his cotrustee having died in the interim), he entered into an agreement for the sale of the stock for $410,000. This agreement provided for payment of $25,000 within ten days and the balance of $385,000 within ninety days after the entry of a court decree approving the sale. Frank Costello promptly filed a complaint to procure a decree approving the contract and directing distribution of the proceeds to be derived from sale of the stock.

On October 10, 1951, pursuant to the complaint filed by Frank as trustee, the court entered a decree approving the sale, terminating the trust, and providing for distribution of the proceeds of the estate as prayed, one-half to Frank and one-sixth to each of the appellants. The decree also provided "that said trust be and it is hereby terminated, subject only to the payment of the balance of the purchase price and the distribution

of the net proceeds thereof. . . ." In that proceeding the two adult appellants were defaulted (although they were present in court and were given an opportunity to object to the sale or to the terms of the decree). The husband of one of the appellants, a member of the Illinois bar, was also present at the hearing. The minor appellant was represented by a guardian ad litem, and a formal answer was filed for him. On the day the decree was entered the stock was deposited in escrow along with the $25,000 payment called for by the sale agreement. The escrow agreement also required payment of the additional $385,000 within ninety days and provided for distribution of the proceeds in accordance with the court decree.

Ten days later, October 20, 1951, Frank died, leaving his widow Mabel as administratrix of his estate. On December 31, 1951, the two adult appellants consulted an attorney, who immediately served a notice of Frank's death on the escrowee and requested him not to make distribution. On January 2, 1952 (within the ninety-day period provided by the sale and escrow agreements) the purchaser deposited the balance of the purchase price, and the escrowee, notwithstanding the notice, made distribution by checks in the appropriate amounts to the appellants and by a check for $196,639.40 payable to Frank J. Costello. This latter check was delivered to Mabel M. Costello through her attorney and by her endorsed as administratrix of Frank J. Costello's estate and deposited to the credit of the estate.

On October 8, 1952, pursuant to leave, appellants filed the bill of review now under consideration. The bill alleged in substance that no sale and disposition of the stock could or did occur until payment of the purchase price was made January 2, 1952; that the death of Frank rendered the decree illegal; that the three

575

grandchildren immediately upon Frank's death became the sole living descendants of the testator and entitled to all the proceeds of the sale of the stock. The bill prayed that all the provisions of the decree relating to termination of the trust and distribution .of the proceeds of the sale of the stock be set aside and that the court decree that all the proceeds passed to the grandchildren upon Frank's death. Mabel M. Costello, individually and as administratrix of the estate of Frank J. Costello, deceased, as respondent to the bill for review, filed an answer consisting of five special defenses and a general defense. The appellants filed their reply to the general defense, as well as five motions to strike the five special defenses. Respondent moved to strike portions of petitioners' motions to strike and to dismiss the bill of review. The order dismissing the bill followed. Out of this melange of pleadings the issues here involved emerge, that is (1) could the appellants use a bill of review to attack the decree in question, and (2) if so, did Frank Costello's interest vest in him prior to the time of his death, or were the "then living" descendants those who survived the time of final payment and distribution, January 2, 1952.

A bill of review is not an alternative remedy for an appeal. In Ward v. Sampson, 395 Ill. 353, 363, 70 N.E.2d 324, the court said:

"A bill of review cannot be made to perform the function of an appeal or writ of error. . . . Errors in a decree resulting from mistaken judgment going only to the correctness of the court's decision, may not . . . be made the basis upon which equitable relief by way of a bill of review may be granted."

The Supreme Court of this State in Bushnell v. Cooper, 289 Ill. 260, 265, 124 N. E. 521, stated that the function of bills of review was "to prevent a miscarriage of justice, and they will be allowed only in fur-

therance of that object." A decree should not be lightly upset, especially where the right of appeal is deliberately waived. It is within these limitations that the present proceeding must be considered.

■ Appellants cite many cases holding that events occurring subsequent to the entry of a decree properly form the basis for a bill of review. The statement of law is correct if the event itself provides the *causal nexus* for disturbing the decree. In Bushnell v. Cooper, supra, the court had entered a decree of separate maintenance for the wife, including an allowance of support money and attorneys' fees. It was subsequently discovered that the wife had died two hours prior to the entry of the decree. Since the death of either party abates a separate maintenance action (cf. Milewski v. Milewski, 351 Ill. App. 158, 114 N.E.2d 419 (1953)), the bill for review was held the proper method for raising such facts, although the court refused to grant any relief on the ground of laches. To the same effect are Merrion v. O'Donnell, 288 Ill. App. 47, 5 N.E.2d 765 (1936), and Ballard v. Searls, 130 U. S. 50 (1889). The facts in the instant case are different.

■ The death of Frank Costello was not an event which changed the situation and altered the rights of the parties. If the bequest was subject to the contingency of survival until the actual distribution of the proceeds of the sale, that contingency existed prior to and at the time of the original decree. Frank's death ten days after the entry of that decree was such a dramatic event that its occurrence has beclouded the true character of the issue, but it in nowise affected the construction of the will nor did it provide any clue with respect to the testator's intention not theretofore known. Therefore the appellants' position, that the rights of the parties were contingent on survival to the date of distribution and payment, should have been

taken and urged upon the court in the original suit. If the court did not adopt such a position, the remedy for any error was by appeal. Appellants did not take such action, but waited until Frank's death made it to their advantage to attack the decree. They now seek to do by bill of review what they failed to do in the original proceeding, when all the pertinent facts relative to the will were known and the only unknown quantity was whether or not it would be to their advantage to raise the point. It is not only vis-a-vis Frank Costello that such a proceeding would be unsound. Its unjustness would apply equally to a case in which any of the appellant grandchildren had died a moment before distribution.

Appellants argue that in the light of Frank's death it would be a grave injustice to deprive them of their right to the entire corpus of the trust estate. At the time of commencement of the original proceeding Frank Costello was a sick man. Appellants knew this and knew that he had determined to sell the stock and subject one-half of the proceeds to his absolute ownership. Under the will he had the right to do so and no one questions that right. He made a contract for the sale of the stock at a price, the fairness of which is not questioned by appellants, but it was not a sale for cash. It cannot be doubted that Frank could have avoided any legal proceedings by arranging a cash transaction for the sale of the stock, even if by so doing he would have had to sell the stock at a lower price. We must therefore assume that if at the time of the original proceeding, Frank Costello had been advised of any opposition to the decree on the part of appellants or had been forewarned of their contention that his interest would not be fixed by such decree unless he survived to the date of distribution, he could well have considered abandonment of the suit and have sought a sale of

the stock for cash. It is not necessary for us to say this was something he should have done nor to inquire into the precise character of his duties as trustee. All we need consider in this respect is that at least he should have had that opportunity. Even if the appellants' legal position were meritorious, it could well be argued that it would be unjust to respondent to review the original proceeding now.

We will now consider whether the will itself makes the bequests in question contingent upon survival to the date of distribution. The will contemplates the following events: (1) written request for sale of the stock by all the children who are living; (2) sale of the stock; (3) disposition of the stock; and (4) payment of the proceeds. It is the contention of appellants that in the phrase "to my descendants then living," the words "then living" mean those who survive to the time when the stock is sold *and* disposed of *and* proceeds paid. In other words, not until the actual cash jingles in the pocket of the ultimate distributee can it be determined who the distributees "then living" were. This would make distribution precarious to the last moment. The argument is based on use of the conjunctive in the clause in question.

██ To support their position, appellants cite familiar rules of construction which from time to time have been announced by the courts in cases involving construction of wills, such as the following: "Every word in the instrument is presumed to have been placed there for some purpose and must be given effect." "All clauses and words in the will must be construed as intended to have some meaning." "It is a fundamental rule in determining the testator's intention that the whole will must be considered and effect given to each phrase or word, if it is possible to do so." In this field of law there is such an abundance of principles, maxims

and rules that almost any position can be supported by a general reference to one or more of them. Not only is there an abundance of such rules, but there is, indeed, a somewhat well-ordered hierarchy among them. Thus we find at the top of the list that of seeking the testator's intention. Next, such intention should be sought from the four corners of the will, taking into account its general design and the testator's general purpose with respect thereto. Then, standing to one side as a reviewing general watching the parade, is the admonishment that in the construction of wills, little aid is to be derived from judicial determination in other cases unless the wills and circumstances are identical in all respects. Stern v. Stern, 410 Ill. 377, 102 N.E.2d 104; Cahill v. Michael, 381 Ill. 395, 45 N.E.2d 657; Sloan v. Beatty, 1 Ill.2d 581, 590, 116 N.E.2d 375; First Nat. Bank of Chicago v. Piaget, 2 Ill.App.2d 207, 119 N.E.2d 457.

■■ In respect to its value in the construction of a long and complicated will we would place at the bottom of the list the requirement that every word be given a meaning. The comparatively new study of semantics and the contributions of many able scholars have made it clear that words can seldom be used to pinpoint an express and precise intention. (See particularly the able and realistic approach to this problem in an article by Charles P. Curtis, entitled "A Better Theory of Legal Interpretation," appearing in "Jurisprudence in Action," published by Baker Voorhis & Co., 1953.) Anyone who believes that this testator and his lawyer draftsman, in preparing this long and complicated will, put significant meaning into every word is either naive or inexperienced. It is well-known to draftsmen that as to a remote contingency such as the one here involved, the minds of both testator and draftsman are not precise and sharp, but hazy and vague.

■ The event in question occurred almost twenty-nine years after his will was made. Without undertaking a discussion of those intriguing subjects of time and relativity over which philosophers and scientists have struggled for ages, it is common sense to note that events separated by short intervals of time, contemplated in the perspective of a remote contingency, are thought of as simultaneous. The intervals between request and sale, sale and distribution, and then payment were used rather with a contemplation that these events were concurrent. The word "and" on which the appellants rely is without significance in this situation.

■ Certain facts are obvious. The testator wanted his children to continue in the business, but he was not sure they would. Therefore he provided that if all his children desired to sell the stock, they could so do by a written request on the trustees. In his mind, the important event was the determination of his children to sell, as expressed by the written request. After that, the steps to be taken can be said to have been ministerial—that is, securing a buyer for the stock, making the sale, and then obtaining payment and making distribution of the proceeds. If the testator had contemplated that the contingency of survival should continue to exist until the final moment of payment, it would have meant that there could be four descendants at the time of request, three at the time of sale, two at the time of distribution (if we assume distribution to be the time when the checks were made), and one at the time of payment (when the checks were received and cleared). In the instant case, request was made, a bona fide agreement for sale entered into, the stock escrowed and put beyond Frank Costello's control, and a sizeable amount put up as escrow money. Suppose Frank, having his own and the grandchildrens' interest at heart, had entered into an installment arrangement

581

with the purchaser at an advantageous and yet secure price. Under appellants' view, he would not share in the proceeds of such sale unless the last installment had been paid prior to his death. This would put the vesting of the corpus on a most tenuous basis. The wording of the trust agreement requires no such interpretation, nor is there precedent therefor. We will briefly consider the two principal cases on which appellants appear to rely.

In Blatchford v. Newberry, 99 Ill. 11, the testator left a widow and two unmarried daughters. He bequeathed to the trustees his entire estate, after certain legacies, and made provisions for the wife, on condition that she accept the same in lieu of dower, the remainder to be divided by the trustees equally between the two daughters for life, with benefit of survivorship in income. After their deaths and that of the wife, the whole of the estate was to be divided among and distributed to the daughters' issue. It then provided that in case of the death of both daughters without issue, then immediately after the wife's death, if she survived the daughters, but otherwise, after the death of the last surviving daughter, the trust estate was to be divided into two shares, one share to be distributed to the lawful descendants of testator's brothers and sisters, the other share to be applied to the founding of a library. The wife renounced her rights under the will, taking her statutory share. Both daughters died without issue and unmarried while the widow was still living. The court rejected the claim of certain descendants of the brothers and sisters who sought a distribution alleging that the widow's renunciation of the will was equivalent in regard to the time of final distribution to her actual death. The court construed the will to prevent distribution during the lifetime of the widow, notwithstanding her renunciation. That case and holding are of no help in construing the will involved here.

In Boldenweck v. City Nat. Bank & Trust Co. of Chicago, 343 Ill. App. 569, 581, 99 N.E.2d 692, cited by appellants, the court had under consideration a rather involved will. The language providing one dispute was as follows:

"Should he (a beneficiary—son), leave no lawful descendants or should all of his lawful descendants (if any) die before the expiration of said 21 years, then and in either such events the said trust estate shall vest in and be paid and delivered over to my then living heirs-at-law."

Appellants cite the following language from the opinion:

"The import of these words is that the vesting, paying and delivering and the determination of the claim of 'then living heirs-at-law' shall take place at the same time. The word 'then' as used in the will is an adverb of time and refers to the events immediately preceding the word, namely, the vesting, paying and delivering. It contemplates the formation of a class at the time of the vesting, paying and delivering of the trust, composed of the persons who would be the testator's heirs-at-law at that time."

Appellants say that language governs the case at hand, but the court specifically states that the "vesting, paying and delivering" were to take place together. The contingency in the Boldenweck case was the death of a son without leaving any lawful descendants or the death of the last lawful descendant prior to the expiration of twenty-one years. Upon that contingency occurring, the "vesting, paying and delivering" were to occur immediately. In the instant case, however, the principle prerequisite to vesting was a written request for the sale of the stock and we are of the opinion that the vesting occurred when that request was made. That

583

is the more reasonable interpretation of the will, and more closely approximates the testator's intention as revealed by the will.

It is also urged by appellants that the decree itself required Frank's survival until the date of distribution before he could share in the proceeds. We find no such requirement in the October 10th decree. The only limitation on the termination of the trust and distribution of the proceeds of sale was that the balance of the purchase price be paid. Even assuming that appellants were correct in this contention, a bill of review is not the proper instrument for seeking relief. If the decree is correct and valid, there is nothing to review by a bill. If someone has violated that decree, the remedy is obvious.

Appellants urge that it would be unjust to permit the decree to stand because the two adult appellants, when the court asked whether there were any objections to the decree, were induced to remain mute by the conduct of Frank Costello's attorney; and that the guardian ad litem of the minor grandchild filed only a pro forma answer in his behalf and he should likewise not be bound. The evidence does not support the charges made, and we find no actual or constructive fraud on the part of Frank Costello or his attorneys. If we look at the matter as of the time when the original decree was entered, there was no good reason why the adult grandchildren or the guardian ad litem of the minor grandchild should object. At that time Frank Costello was alive. If the grandchildren had then told the court they desired the decree made contingent upon his survival to the time of distribution, Frank could well have asked that the court dismiss his suit in order that he might, as we have before pointed out, seek an immediate cash transaction.

██ Appellants urged that the "spendthrift" clause of the will requires payment to be made directly to the beneficiaries and that consequently no payments could be made to Mabel Costello, as the administratrix of Frank's estate. This point was not raised by appellants in their original brief and is mentioned only in passing in their reply brief. The "spendthrift" clause is a formal provision designed principally to avoid frustration of the testator's intentions by the claims of creditors. It has little relevancy to the issue in the instant case and it must yield to the testator's intention as derived from the language of the dispositive provisions of the will. There is no doubt that the testator's primary concern was with his own descendants, but he gave his surviving children the right to direct the sale of the stock, and upon such direction, the gift vested absolutely in such descendants. It follows, therefore, that Frank Costello's share of the proceeds would go to his estate upon his death, since such share became vested in him prior to his death.

Decree affirmed.

McCORMICK, P. J. and ROBSON, J., concur.