Kenneth D. Otta, Executor of the Estate of Henry A. Otta, Deceased, Plaintiff-Appellee, v. Mabel E. Otta, et al., Executor of the Estate of August T. Otta, Deceased, Defendants and Appellees, and Opal Tippitt, Defendant and Appellant.

Gen. No. 64–56.

Fifth District.

April 23, 1965.

Joe P. Longwell, of Pana for appellant.

Baker & Baker, of Shelbyville, for Mabel E. Otta and Shelby Loan & Trust Company, appellees.

GOLDENHERSH, J.

This is an appeal from the decree of the Circuit Court of Shelby County, construing the Will of Henry A. Otta, deceased.

Henry A. Otta died, testate, on January 3, 1945. His Will, executed on January 6, 1943, was duly admitted to probate. Paragraph Third of his Will created a life estate in his widow, Lillie, in all real estate owned by him. The Will also provided:

> "Sixth: Within a reasonable time after the death of my wife Lillie Otta and not to exceed one year thereafter, I direct that my Executor hereinafter named sell all my real estate then remaining undisposed of at the termination of my wife's life estate; said sale to be either public or private and on such terms as my Executor may believe to be to the best interests of my estate. After the payment of any expense of sale he shall distribute the proceeds of sale as follows: To my son August T. Otta one-eighth thereof; and the remaining seven-eighths shall be divided equally between my children Lois Hooper, Alice Shuff, and Kenneth D. Otta. If either of my four last named children is not then living, his or her share shall go to his or her child or children, if any then living, share and share alike. If either of said four children leaves no child or children then surviving, the share of such child shall pass in

64

equal parts to such of my four said children last mentioned as may be then living. In making the foregoing division I have in mind various advancements and financial aid that I have heretofore given to my son August, as well as other considerations which are to me material."

Paragraph Eighth of the Will appointed the executor, empowered him to make, execute and deliver any and all deeds and papers essential to the administration of the estate and concluded:

"I further direct that he shall have full authority as Executor or Trustee to manage and control any and all real estate following my wife's death and until the same is disposed of, collecting rents, paying taxes, and otherwise managing the same; the proceeds thereof to be distributed in the manner in which the proceeds of sale of said real estate is to be divided."

Lillie Otta, testator's widow, died on January 7, 1963. At the time of her death all four of Henry A. Otta's children named in the above quoted paragraph, namely, August T. Otta, Lois Hooper, Alice Shuff and Kenneth D. Otta, were living.

August T. Otta, one of the four children named, died testate on March 25, 1963. His will was admitted to probate and defendant, Shelby Loan & Trust Company, was appointed executor. August T. Otta left surviving him his widow, Mabel E. Otta, and three daughters, Helen Bigos, Lillian Neihl and Opal Tippitt.

On July 29, 1963, at public sale, the executor of the estate of the testator, Henry A. Otta, sold the lands owned by the testator. The defendant, Shelby Loan & Trust Company, as executor of the estate of August T. Otta, claims it is entitled to the one-eighth ($\frac{1}{8}$) share of the proceeds of the sale to which August T. Otta would have been entitled, were he living. Lillian Neihl and Opal Tippitt, two of August's three sur-

viving daughters, contend that the one-eighth (⅛) of the proceeds of the sale is payable to the surviving children of August T. Otta and not to his estate.

Kenneth D. Otta, executor of the estate of Henry A. Otta, filed this suit to construe the will, naming as parties defendant, Mabel E. Otta, widow of August T. Otta, Helen Bigos, Lillian Neihl and Opal Tippitt, daughters of August T. Otta, Alice Shuff, Lois Hooper and Kenneth D. Otta, the three children of the testator to whom he gave seven-eights (⅞) of the proceeds of the sale of the land, and Shelby Loan and Trust Company, executor of the Estate of August T. Otta. Separate answers were filed on behalf of Mabel E. Otta, the widow, and Shelby Loan and Trust Company, the executor of the estate of August T. Otta. The defendants Kenneth D. Otta, Alice Shuff, Lois Hooper and Helen Bigos entered their appearances and filed no pleadings. The defendants Lillian Neihl and Opal Tippitt filed a joint answer asserting that the children of August T. Otta, and not his estate, were entitled to the one-eighth (⅛) portion of the proceeds of the sale. The plaintiff and the defendants who had answered stipulated the facts as hereinabove set forth, and the cause was submitted to the trial court on the stipulation of facts and pertinent exhibits. The Court rendered its decree construing the Will and held therein that it was the intent of the testator that Lillie Otta, wife of Henry A. Otta, should have a life estate in said real estate, that within one year after her death, the executor of the estate of Henry A. Otta was to sell said real estate and divide the proceeds, after the payment of the expense of the sale, as follows: one-eighth (⅛) thereof to August T. Otta, the remaining seven-eighths (⅞) to be divided equally between Lois Hooper, Alice Shuff and Kenneth D. Otta, if living at the time of the death of Lillie Otta. The Court further found that August T. Otta, Lois Hooper,

Alice Shuff, and Kenneth D. Otta were each living at the time of the death of Lillie Otta, and that in accordance with the intent of the testator, one-eighth (⅛) of the funds for distribution was payable to the defendant, Shelby Loan & Trust Company, as executor of the estate of August T. Otta. This appeal is prosecuted by Opal Tippitt, one of the children of August T. Otta.

The issue presented is whether it was the intent of the testator, Henry A. Otta, that the recipients of the proceeds of the sale be determined as of the time fixed for distribution, that is, subsequent to sale of the land, or at some prior time.

██ ██ The paramount rule of testamentary construction is that the intention of the testator as expressed in his Will governs the distribution of his estate, and the intention of the testator, once it has been ascertained will be given effect unless to do so would violate some settled rule of law or would be contrary to public policy. Sloan v. Beatty, 1 Ill2d 581, 116 NE2d 375.

In the case of Jennings v. Jennings, 44 Ill 488, the testator, Israel Jennings, Sr., died testate on August 7, 1860. His Will directed his executors to sell such of his lands as were not specifically devised, at public sale, after such notice as his executors thought necessary, the sale to take place as soon after his death as convenient. It further provided that after payment of debts, expenses, and bequests, the residue be divided equally between four named children, and in the event of their death or deaths, their children to take their respective interests. The testator's son, Israel Jennings, Jr., died intestate on September 19, 1861, leaving a widow and several children. The testator's lands were sold on May 25, 1863. The Supreme Court held that no present interest passed to Israel Jennings, Jr., as the land was not converted into money until after

67

his death, and that by the express terms of the Will of Israel Jennings, Sr., Israel Jennings, Jr.'s share went to his children.

In the case of Banta v. Boyd, 118 Ill 186, 8 NE 671, Elijah Iles died testate on September 4, 1883. His Will authorized and empowered his executors to sell his property, both real and personal, "in manner and on such terms as they may deem best," and pay the proceeds to certain named children of testator's sister and other named relatives. It further provided that in the event of the death of any one named, his portion be paid to his offspring, and if no offspring, it be deemed lapsed. Spencer Boyd, one of the named nephews died on September 17, 1883, thirteen (13) days after the testator, leaving surviving children. The Court held that it was not the property which was devised, but the proceeds of its sale, that the parties were to take on the date of distribution, and the share of Spencer Boyd was ordered paid to his surviving children.

In the case of Starr v. Willoughby, 218 Ill 485, 75 NE 1029, the testator's Will provided that his lands, not otherwise devised, be sold as soon as practicable after his decease, and directing that after payment of certain sums, the proceeds be divided among such of his children, "as may be living at that time," and if they be deceased, their descendants to take per stirpes. Testator's daughter died testate subsequent to his death, but prior to the sale of the lands. The Supreme Court held that it was not testator's intention to devise land to his children, but to give them the proceeds thereof. The Court further held that as the daughter died before the period of distribution had arrived, the share represented by her went to her children and not to her husband as devisee under her Will.

In the case Klocksieben v. Orris, 317 Ill App 115, 45 NE2d 504, William Klocksieben died testate on April 26, 1927. The second clause of his Will, dated June 7, 1920, and admitted to probate on July 29, 1927, bequeathed his personal property to his wife, Augusta, and gave her a life estate in his real estate. The third clause of his Will directed his executor, within four years after the death of Augusta, to sell the real estate at the best market value possible, at public or private sale, on such terms as he deemed best. It further provided that if his wife Augusta predeceased him, his real estate was to be sold within four years of his death, on the terms above set forth. He further pointed out that if she predeceased him, there was no necessity for the second clause, and in such event, it was declared null and void. The seventh clause of the Will provided:

"The remainder and residue of the money received from the real estate together with all my personal property, should my wife, Augusta Klocksieben, die before my death shall occur, shall be divided equally among my children who are named in this Seventh Clause of this, my Last Will and Testament, namely: Anna Niels, Herman Klocksieben, Robert Klocksieben, Augusta Pralle, Sophia Pipenbrink and Minnie Klocksieben, share and share alike, to have and to hold forever. Should my son Herman Klocksieben die before the death of either myself or my wife, Augusta Klocksieben shall occur, then my children who shall survive him and who are named in this Seventh Clause shall havé his share divided equally among them, share and share alike. In case any of my children shall die then it is my will and desire that the heirs of his or her body shall have the parent's share the same as though the parent were living except that in no case

will the heir or heirs of my son Herman Klocksieben have any part of my estate whatsoever."

The testator's widow, Augusta, died on February 25, 1940. Augusta Pralle, one of the testator's children named in the clause above quoted, died testate in February, 1941, before receiving any part of her father's estate. We shall not here detail the procedural aspects of the case, the final result being that the trial court entered a decree to the effect that the surviving children of Augusta Pralle, and not the executor of her estate, were entitled to the proceeds of the sale of the lands of the testator, William Klocksieben.

In its opinion, at page 118, the Appellate Court for the Second District, through Mr. Justice Dove, said "In support of his contention, appellant relies upon and quotes from Riddle v. Killian, 366 Ill 294, 302, 303, 8 NE2d 629, as follows:

" 'The distinction between vested and contingent remainders has been precisely stated by Professor Gray. "Whether a remainder is vested or contingent," he states, "depends upon the language employed. If the conditional element is incorporated into the description of, or into the gift to the remainderman, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested." '

"Although, under Gray's rule, the language employed by the testator in the case at bar constituted a vested remainder in his children, effective at the time of the testator's death, the rule does not carry any implication that such a gift is indefeasible. It follows therefore, that if the gift to Augusta Pralle was defeasible by her death prior to the time of distribution, the fact that it was a vested remainder at the time of the testator's death is not controlling." The Court held that the vested remainder in Augusta Pralle was

70

defeated by her death prior to the time of distribution, and her surviving children, as the heirs of her body, by the gift over in the Will, were substituted.

In the light of the authorities above cited and quoted, it would appear the testator intended that the recipients of the funds derived from the sale of his lands be determined as of the time of their distribution.

■ In Davidson v. Davidson, 2 Ill2d 197, at page 201, 117 NE2d 769, the Supreme Court said: "The testator's intention is to be gathered not from one clause in the will alone, but from a view of the will as a whole and all of its parts, sentences, phrases or words, bearing in mind the plan of the testator as expressed in the entire will."

Paragraph Eighth of the will (supra) provides that subsequent to the death of the life tenant and until the land is sold, the executor is directed and empowered to collect the rents, pay the taxes and manage the real estate, the proceeds to be distributed in the manner in which the proceeds of the sale is to be divided. This expresses a clear intent that the four children named in Paragraph Sixth of the will were to have no right or interest in the real estate, or the proceeds thereof, until the time for the distribution of the proceeds of its sale. The provision of the will ordering the sale of the land and the distribution of the funds is a bequest of money, not a devise of real estate, and the four children named in Paragraph Sixth take no interest in the land. Ebey v. Adams, 135 Ill 80, 25 NE 1013; Wattjes v. Faeth, 379 Ill 290, 40 NE2d 521.

■ In Paragraph Sixth, the language "If either of my four last named children is not then living . . . ," follows immediately the directives for sale of the real estate and the fractional distribution. In that context the word "then" must be construed to be an adverb of time and not a reference to an event. As such, it has

71

the effect of postponing the ascertainment of the distributees of the funds until the time for such distribution. Bergendahl v. Stiers, 8 Ill2d 257, 133 NE2d 280. We conclude, therefore, that it was the intent of the testator, Henry A. Otta, that the persons entitled to the funds derived from the real estate between the dates of the death of the life tenant, Lillie Otta, and the date of its sale, and the distributive shares in the proceeds of the sale, be determined as of the time for distribution.

Although the decree of the Circuit Court must be reversed, the interests of the persons who were made parties to this action, and who did not appeal, are determined by the decree. Griffin v. Griffin, 29 Ill2d 354, 194 NE2d 641. Although the decree is joint in form, it is several in effect, and the reversal affects only the interest of the appellant, Opal Tippitt. The Decree of the Circuit Court of Shelby County is reversed with directions to enter a decree consistent herewith.

Decree reversed and cause remanded with directions.

MORAN, J., concurs.

EBERSPACHER, P. J., dissenting:
I would affirm the decree of the circuit court.

In my opinion the Will of Henry A. Otta lacks the strong language that would be necessary to determine that his manifest intention was to permit his executor, either innocently or designedly, by expediting or delaying distribution, to control the distribution of property to which the son had a de jure right. I find no language in the Will that would make the remainder interest contingent on August Otta's having the money from the proceeds of the sale in his hand. In the absence of any devise or bequest of the remainder in-

terest, other than what might be inferred by the sixth clause, it would seem unnatural to require that testator's son would have to have the money in the bank or jingling in his pocket before he could call it his own. At no place does the testator specifically tie the right to take to the time of distribution or payment, nor are the gifts to the children expressly conditioned on their being alive at such time.

> "In the absence of a clear indication that the testator intended that there should be an indefeasible vesting in the original beneficiary only if he should survive to an actual receipt of the bequest, the inclination of the courts, when called upon to construe a will providing for a gift over in the event of the death of the first taker before he receives or is paid a legacy, is to regard the gift over as having reference to death before the legacy is de jure payable." 142 ALR 137.

The sound reasons for this rule are well pointed out in a number of English decisions, cited in the same annotation. In Wengerd's Estate, 143 Pa 615, 22 A 869, 13 LRA 360, the court said:

> "It would be straining a point to hold that this testator intended that his grandchild should be deprived of his share, though he should die leaving a child or children, by the mere accident of his death the day before the money was distributed. This would enable an executor, under some circumstances, absolutely to defeat the will of his testator, by withholding or refusing distribution for a certain period. We cannot assume that this testator intended to lodge such a power in the hands of the executor of his will."

Since each will must be construed in the light of its particular phraseology and the facts and circumstances

surrounding the testator at the time of its execution, decided cases do not have the controlling force of precedents in matter of construction of a will that they have in other instances; a will is a writing found in a great variety of forms and executed under circumstances peculiar to each individual case. Unless a will case cited is in all respects directly in point and agrees in every circumstance with the case before the court, it will have little or no weight. Ickes v. Ickes, 386 Ill 19, 53 NE2d 585; Cahill v. Michael, 381 Ill 395, 45 NE2d 657; Johnston v. Herrin, 383 Ill 598, 50 NE2d 720. For this reason the cases cited in the majority opinion, are not stare decisis in this case. A line of Illinois cases holding to the contrary can likewise be cited; See Costello v. Warnisher, 4 Ill App2d 571, 124 NE2d 542; Wiener v. Severson, 11 Ill2d 347, 143 NE2d 225; Wattjes v. Faeth, 379 Ill 290, 40 NE2d 521.

Our courts have consistently held that words occurring more than once in a will are presumed always to be used in the same sense. Ickes v. Ickes, supra; Gridley v. Gridley, 399 Ill 215, 76 NE2d 146; Bostwick v. Bostwick, 301 Ill App 196, 22 NE2d 272. The first use of the word "then" is found in the sixth clause when the executor is directed to sell all real estate "then remaining undisposed of at the termination of my wife's life estate." There can be no question that it there refers to the termination of the life estate. The presumption obtains that testator's subsequent use of the word "then" in that clause refers to the same time, namely, the termination of the life estate. The fact that what is bequeathed under the sixth clause, is the proceeds from the sale of the real estate and not the real estate, does not lend any support to appellant's position in this case. The case of Hull v. Adams, 399 Ill 347, 77 NE2d 706, held specifically that the fact that the testator directed the farm to be sold and the proceeds divided does no more than to work

74

an equitable conversion, and the gift, technically speaking, becomes a bequest instead of a devise but the right of the beneficiaries therein is the same in either instance.

Obviously, the only reason for creating the life estate of testator's wife in the real estate was to provide for her support and maintenance. After her death the steps directed to be taken can be said to have been ministerial—that is, securing a buyer for the land, making the sale, obtaining payment, and making distribution of the proceeds. Twenty years had passed between the execution of the will and the contingency. As is said in Costello v. Warnisher, supra, "it is common sense to note that events separated by short intervals of time, contemplated in the perspective of a remote contingency, are thought of as simultaneous." The intervals between the death of the widow, sale of the property, and distribution of the proceeds were viewed only with a contemplation that these events would be concurrent. In this case, from the lack of a more explicit word than "then," distantly separated from a time or event to which it might be said to refer, it is obvious that if the remote contingency of the son's death within the relative short time between the widow's death and the directed distribution were contemplated or considered, the contemplation was as hazy as the language used to provide for such remote contingency.

The eighth clause of the will, instead of supporting the contention that the children had no interest until distribution was made, is a recognition of their interest in the period between the widow's death and the distribution. Rather, it is only a limitation on those recognized interests, made for the purposes incidental to the orderly administration of testator's estate. If the children had no right in their gifts until distribution, that clause was not necessary, and when we de-

75

termine testator's intent from the entire instrument, we are led to the logical conclusion that testator recognized that the children become the owners upon the life tenant's death, subject to defeasement by the sale. To carry out the desire for orderly administration expressed in the seventh clause, it was necessary to place the duty to perform the necessary ministerial acts, for an orderly procedure during that interim, in some one person, and it was only natural that the executor who was to make the sale should be that person. It is to be noted that testator intended him to control the husbandry of the land in the interim period, recognizing that such interim period would exist; but he did not see fit to give the executor any more authority than would be absolutely necessary to make the distribution which testator desired.

The case of Klocksieben v. Orris, 317 Ill App 115, 45 NE2d 504, appears to be the most recent Illinois pronouncement of the rule that despite the lack of a clear indication on the part of a testator, the beneficiary had no legacy, unless he survived to have the money in hand. In that case the court held that the personal representative of the daughter's estate was not entitled to the proceeds of the sale of the land, but that the same should go to the heirs of the body of the daughter because the gift to the daughter was defeasible not alone by her death prior to that of the life tenant, but also by her death prior to the time of actual distribution. It did not follow the view that the gift over will not take effect in the absence of a clear indication to the contrary, unless the first taker dies before the gift is de jure distributable. The case is commented upon in a lengthy discussion of gifts over on death found in Illinois Law of Future Interests, Cayey and Schuyler, 1941, sec 159, 1947 Cumulative Pocket Part. There the authors say "The decision is not free from doubt; it is clear, however, that a sub-

stitutionary gift may be expressly conditioned upon death before the time of distribution or upon the death of the remainderman only before that of the life tenant." Expressly means, in direct or unmistakable terms; its synonyms are, explicitly, definitely and directly.

Furthermore, that case lacks the similarity of facts, language and circumstance that would make it applicable here. The language used in the Klocksieben case, created vested remainders which in some instances were expressly divested, and evidenced the intention by the expression of the desire that the gift over should go to "the heirs of his or her body" indicating that a widow of a deceased child was under no circumstances to take an interest. A further marked difference is, that in the Klocksieben will the time of the sale of the real estate was fixed at a time throughout a period of four years following the death of the life tenant, indicating that the testator contemplated that a relatively long period of time might elapse between the death of the life tenant and the sale. The Klocksieben case was not followed by our Supreme Court in 1957, in Wiener v. Severson, supra, nor by the First District Appellate Court in 1955 in Costello v. Warnisher, supra. In 1949, commenting that Illinois is committed to the rule favoring the early vesting of estate, that there was a lack of express words of survivorship, and that the testator's chief purpose was to keep the estate intact, a United States District Court in Illinois in Hodson v. Jordon, 82 F Supp 183, recognized that the primary remainderman becomes absolutely and indefeasibly entitled to the property where he survives the payment of the debts; and pointed out that under Illinois Law vested interests, subject to be divested are subject to execution process.

The failure to use express language, from which a clear manifest intent can be determined, should defeat

a rule that would require the beneficiary to survive the ministerial acts to be performed by the executor, and allow the executor, by design or accident, to determine whom the beneficiaries might be.